Argued and submitted March 9, affirmed June 22,
reconsideration denied July 28,
petition for review allowed October 6, 1981 (291 Or 708)

In the Matter of Sonja Charloe, a Child.

STATE EX REL JUVENILE DEPARTMENT,
MULTNOMAH COUNTY,
*Respondent,*

*v.*

ENGLAND,
*Appellant.*

(No. 47,274, CA 18918)

629 P2d 1319

Craig J. Dorsay, Portland, argued the cause for appellant. With him on the briefs were Kent B. Thurber and Oregon Legal Services Corporation, Portland.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Chief Judge, and Thornton and Richardson, Judges.

JOSEPH, C.J.

## JOSEPH, C. J.

This case requires us to interpret the Indian Child Welfare Act: 25 USC § 1901 *et seq.* (ICWA). The question presented is whether petitioner is an "Indian custodian" within the meaning of 25 USC § 1903(6), which provides:

> "'Indian custodian' means any Indian person who has legal custody of an Indian child under tribal law or custom or under State law, or to whom temporary physical care, custody, and control has been transferred by the parent of such child; * * *."

Petitioner is the maternal aunt of Sonja Charloe, the child whose foster care placement is at issue. Two days after the birth of the child (November 4, 1970) the natural mother released her for adoption, but later rescinded that release. Since then Sonja has been living off and on with her mother and petitioner's family, as well as other people. Children's Services Division (CSD) has been intermittently involved with Sonja since she was born. She has been made a ward of the juvenile court and committed to CSD numerous times. The last wardship order, which remains in effect, was issued on February 13, 1979. At that time, although she was committed to the legal custody of CSD, she was placed by CSD in the foster care of petitioner (and her husband).

On January 15, 1980, a hearing was held, at which it was determined that the foster care placement with petitioner should be terminated. The natural mother and her attorney were present at the hearing. Petitioner did not receive statutory notice of the hearing. 25 USC § 1912(a) provides:

> "(a) In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian

and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided,* That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding."

Petitioner sought to invalidate the January 15 order on the ground that she is an "Indian custodian" and was entitled to the procedural notice requirements of the ICWA. On August 20, 1980, a hearing was held, and the court concluded that petitioner is not an "Indian custodian." The order provided:

"This matter came before the court on the motion of the maternal aunt and uncle, Mr. and Mrs. England, for a reconsideration of the wardship order and disposition of January 15, 1980. The Court listened to the arguments of respective counsel for each of the parties, including counsel for Mr. and Mrs. England, and makes the following finding of law: Mr. and Mrs. England are not Indian custodians within the definition of 25 USC § 1903(6) for the reason that they do not have legal custody of the child under the law of the State of Oregon. Based on this finding, the motion for reconsideration is not well taken and is hereby disallowed."

Petitioner appeals, claiming that the court erred in finding that, because legal custody of the child was in CSD pursuant to ORS 419.507(2),[1] petitioner did not fit within the statutory definition. She maintains that Congress intended the term "Indian custodian" to be interpreted in a manner consistent with the purposes of the entire ICWA and that a proper interpretation of the term includes any Indian who has actual *lawful* physical custody of an Indian child, however obtained. She also argues that by reason of federal plenary power in the regulation of Indian affairs, the federal standards established by the ICWA preempt state law defining legal custody.

---

[1] ORS 419.507(2) provides:

"A child found to be within the jurisdiction of the court as provided in subsection (1) of ORS 419.476, may be made a ward of the court. Where a child has been found to be within its jurisdiction, and when the court determines it would be in the best interest and welfare of the child, the court may:

The state argues that the ICWA requires an "Indian custodian" (other than one who obtained physical control from the parent) to have legal custody and that in this case legal custody was in CSD. In response to the preemption argument, the state asserts that, because the federal statute refers to state law for a definition of legal custody and there is no federal definition of "legal custody," there is not a conflict to be resolved by resort to preemption.[2]

The ICWA creates several procedural safeguards for parents and "Indian custodians" in some proceedings involving Indian children.[3] The right to intervene is

---

"(1) Place the child on probation or under protective supervision. The court may direct that the child remain in the legal custody of his parents or other person with whom he is living or may direct that the child be placed in the legal custody of some relative or some person maintaining a foster home approved by the court, or in a child care center or a youth care center authorized to accept the child. The court may specify particular requirements to be observed during the probation or protective supervision consistent with recognized juvenile court practice, including but not limited to restrictions on visitation by the child's parents, restrictions on the child's associates, occupation and activities, restrictions on and requirements to be observed by the person having the child's legal custody and requirements for visitation by and consultation with a juvenile counselor or other suitable counselor. Restitution for property taken, damaged or destroyed by the child may be required as a condition of probation.

"(2) Place the child in the legal custody of the Children's Services Division for care, placement and supervision.

"(a) The division may place the child in a child care center authorized to accept the child.

"(b) If the child has been placed in the custody of the Children's Services Division, the court shall make no commitment directly to any residential facility, but shall cause the child to be delivered into the custody of the Children's Services Division at the time and place fixed by rules of the division. * * *"

[2] Neither party challenges the Indian heritage of the petitioner or the child.

[3] 25 USC § 1903(1)(i) and (ii) provide:

"For the purposes of this chapter, except as may be specifically provided otherwise, the term—

"(1) 'child custody proceeding' shall mean and include—

"(i) 'foster care placement' which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;

provided in 25 USC § 1911(c).[4] In order to allow parents and Indian custodians their right to intervene in any involuntary proceeding in state court, the party seeking the foster care placement of, or termination of parental rights to, an Indian child is required to give prior notice by registered mail of the pendency of the proceeding. 25 USC § 1912(a). Once a parent or Indian custodian intervenes in the proceeding, he or she is entitled to several additional rights: (1) to appointment of counsel if indigent, 25 USC § 1912(b); (2) to examine and controvert all documents and evidence, 25 USC § 1912(c); (3) to have the court satisfied, prior to removing a child, that active rehabilitative efforts to maintain the family have failed, 25 USC § 1912(d); and (4) to have the state prove, by clear and convincing evidence, supported by the testimony of qualified expert witnesses, "that the continued custody of the child by the * * * Indian custodian is likely to result in serious emotional or physical damage to the child." 25 USC § 1912(e). The parent or Indian custodian may petition any competent court to invalidate the results of the proceeding. 25 USC § 1914.

The policy which the ICWA seeks to implement is set forth in 25 USC § 1902:

"The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs."[5]

---

"(ii) 'termination of parental rights' which shall mean any action resulting in the termination of the parent-child relationship;"

[4] 25 USC § 1911(c):

"In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding."

[5] The Congressional findings were as follows:

In H. R. Rep. No. 1386, 95th Cong., 2d Sess. 19 (1978), reprinted in US Code Cong. & Ad. News 7530, 7541 (House Report), the House committee expressed its intent as follows:

"* * * [T]he committee has noted a growing crisis with respect to the breakup of Indian families and the placement of Indian children, at an alarming rate, with non-Indian foster or adoptive homes. Contributing to this problem has been the failure of State officials, agencies, and procedures to take into account the special problems and circumstances of Indian families and the legitimate interest of the Indian tribe in preserving and protecting the Indian family as the wellspring of its own future.

"While the committee does not feel that it is necessary or desirable to oust the States of their traditional jurisdiction over Indian children falling within their geographic limits, it does feel the need to establish minimum Federal standards and procedural safeguards in State Indian child custody proceedings designed to protect the rights of the child as an Indian, the Indian family and the Indian tribe."

---

"Recognizing the special relationship between the United States and the Indian tribes and their members and the Federal responsibility to Indian people, the Congress finds—

"(1) that clause 3, section 8, article I of the United States Constitution provides that 'The Congress shall have Power * * * To regulate Commerce * * * with Indian tribes' and, through this and other constitutional authority, Congress has plenary power over Indian affairs;

"(2) that Congress, through statutes, treaties, and the general course of dealing with Indian tribes, has assumed the responsibility for the protection and preservation of Indian tribes and their resources;

"(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

"(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

"(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 USC § 1901.

Petitioner argues that because of the Congressional intent to promote the stability of Indian families, Congress did not intend to limit the class of "Indian custodians" only to those satisfying the state definition of legal custody. She points to another portion of the House committee report which refers to 25 USC § 1903(6), the definition of "Indian custodian":

> "Paragraph (6) defines 'Indian custodian.' Where the custody of an Indian child is lodged with someone other than the parents under formal custom or law of the tribe or under State law, no problem arises. But, because of the extended family concept in the Indian community, parents often transfer physical custody of the Indian child to such extended family member on an informal basis, often for extended periods of time and at great distances from the parents. While such a custodian may not have rights under State law, they do have rights under Indian custom which this bill seeks to protect, including the right to protect the parental interests of the parents." House Report, *supra,* at 7543.

The drafters of the ICWA recognized that by custom, tradition, tribal law or necessity members of the "extended family" can have extensive responsibilities and duties to assist in the rearing of Indian children. They sought to negate the view that transfer of physical custody of an Indian child to a member of the extended family was *prima facie* evidence of parental neglect. House Report, *supra,* at 7542. The definition of "Indian custodian" incorporates that policy. The last disjunctive phrase of the definition provides that an "Indian custodian" is "any Indian person * * * to whom temporary physical care, custody, and control has been transferred by the parent of such child."

Petitioner's argument that Congress intended a broad class of "Indian custodians" and did not intend to refer only to persons who have legal custody as defined by state law reaches too far. Congress expressly provided that an "Indian custodian" may be an Indian person to whom a parent temporarily transfers the care or physical custody of the child, thereby recognizing transfers to extended family members. While an informal transfer of care or physical custody gives rise to the procedural rights provided in the ICWA, where there is a formal, statutory foster placement,

as here, involving CSD as legal custodian, a foster parent, not having legal custody, is not, by the terms of the statute, afforded the procedural safeguards of the ICWA.

Petitioner claims that a member of the extended Indian family may be placed in a dilemma, having to choose between the procedural protections of the ICWA and entitlement to foster care payments from the state. The state brief correctly points out that the forced choice is attributable to the interaction of two federal statutes. 42 USCA § 608(a) provides federal funds for foster care for children whose placement and care are the responsibility of the state. It is this state's policy to make foster care payments only for those children in CSD's custody. *See* OAR 412-21-015.[6] While that dilemma is unfortunate, and perhaps unintended,[7] Congress in enacting the ICWA clearly expressed its intent to extend procedural safeguards

---

[6] OAR 412-21-015 provides:

"Eligibility for family foster care placement and payment by CSD shall be limited to the following three types of persons or situations:

"(1) Children committed by a juvenile court to the temporary or permanent legal custody of CSD.

"(2) Children whose parents or legal guardians have voluntarily and by written agreement and request given physical custody of the children to CSD for placement in a family foster home, subject to the following conditions (a) through (g):

"* * * * *

"(3) Children where it is determined that there is potential eligibility for AFDC-FC will be referred to Support Enforcement Division, Department of Justice for determination of ability of parent(s) to make payment towards support of children. Similarly, where children continue in voluntary care more than 30 days, parents will be expected to make payment towards support as agreed to with CSD. If parents fail to make payments, they will be referred to SED for determination of ability to pay. If parents or guardian refuse to make payment as determined by SED or Juvenile Court, voluntary care will discontinue within 30 days."

[7] In an extensive critical analysis of the ICWA, R. Barsh, *The Indian Child Welfare Act of 1978: A Critical Analysis,* 31 Hastings Law Journal, 1287 (1980), the author states:

"Enacted in 1978, the Indian Child Welfare Act (Act) is the result of an attempt by Congress to promote the stability of Indian families and tribes. Responding to a demonstrated risk of unwarranted removal of Indian children from their homes by state and private child welfare agencies, the Act was intended to impose strict procedural limitations on these agencies' activities. Unfortunately, the Act falls far short of achieving the goals set by Congress." (Footnotes omitted.)

only to Indian persons with legal custody obtained through tribal law or custom or state law or those who through informal means have obtained the physical custody of an Indian child from the parents.[8]

Affirmed.

---

[8] We note that petitioner and her husband had physical custody of the child at the time of the 1979 wardship order, but that custody had not come about by a transfer of the child to them by the mother but by a friend of the mother who had received the child from the mother. Petitioner has not maintained here that she qualifies as an Indian custodian by reason of that transfer.