Argued and submitted June 14, affirmed August 22, petition for review denied November 27, 2001 (333 Or 73)

In the Matter of
Ashley Nicole Amador, a Minor Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES
and Ashley Nicole Amador,
*Respondents,*

*v.*

Hope Lynn AMADOR,
aka Hope Lynn Davis,
*Appellant.*

9900561; A113025

30 P3d 1223

James A. Palmer argued the cause and filed the brief for appellant.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

## BREWER, J.

■ Mother appeals from a judgment terminating her parental rights to child. We write only to address mother's argument that the trial court erred in allowing one of the state's witnesses to testify as a "qualified expert witness" under the Indian Child Welfare Act (ICWA), 25 USC § 1912(f).[1] *See also* ORS 419B.521(4) (implementing ICWA). We review rulings regarding the admissibility of expert testimony for errors of law. *See State v. Rogers*, 330 Or 282, 315, 4 P3d 1261 (2000) (reviewing for errors of law trial court's ruling under OEC 702 that a witness was not an expert qualified to testify regarding a particular topic). We affirm.

Mother is an enrolled member of the Choctaw Nation of Oklahoma Indian tribe (tribe). She has five children. Her four oldest children live with their respective fathers. Child in this case is mother's youngest. Child was born on July 1, 1999. Child also is an enrolled member of the tribe. On July 12, 1999, the juvenile court awarded temporary custody of child to the State Office for Services to Children and Families (SCF). Child has since remained in SCF custody.

On July 28, 1999, an SCF caseworker informed mother that SCF had decided to seek termination of her parental rights to child. On February 1, 2000, SCF filed a petition to terminate mother's parental rights. The petition alleged, in part, that

> "mother is unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the mother's home is improbable within a reasonable time due to conduct or conditions not likely to change, including, but not limited to the following:

---

[1] 25 USC § 1912(f) provides:

"No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

"(a)    Addictive and habitual use of intoxicating liquors or controlled substances to the extent that parental ability has been substantially impaired.

"(b)    Lack of effort or failure to obtain and maintain a suitable or stable living situation for the child so that return of the child to the mother is possible.    .

"(c)    Failure to present a viable plan for the return of the child to the mother's care and custody.

"(d)    An emotional illness, mental illness, or mental deficiency of such nature and duration as to render the mother incapable of providing care for extended periods of time.

"(e)    Lack of effort to adjust the mother's circumstances, conduct or conditions to make return of the child to the mother possible.

"(f)    Failure to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

The petition further alleged that SCF had satisfied the requirements of ICWA and that child's best interest would be served by the termination of mother's parental rights so that child could be placed for adoption.

At trial, several witnesses testified regarding mother's anger management problems, mental illnesses, personality disorders, and poor parenting skills. With the exception discussed below, it would serve no useful purpose to review the evidence in greater detail here. Suffice it to say that the evidence established beyond a reasonable doubt the allegations of the state's petition for termination of parental rights.

Stacy Bacon testified in favor of termination. Bacon is an enrolled member of the tribe who, at the time of trial, had been an Indian Child Welfare worker for the tribe for two years. She has a bachelor's degree in criminal justice and history, and she had testified as an expert in three previous termination proceedings. Prior to testifying, Bacon had reviewed the SCF case file and also had spoken with mother via telephone for 30 to 60 minutes. Bacon testified that active

efforts had been made "to provide remedial services and rehabilitative programs designed to prevent the breakup of this family." When Bacon was asked whether she believed that "continued custody of [child] by the mother * * * is likely to result in serious emotional and physical damage to the child," mother's attorney objected, arguing that "there is an inadequate basis that this witness is an expert in future harm to children." The attorney for child responded to mother's objection:

> "[Bacon] is appearing as a representative of the Choctaw Nation of Oklahoma. She is their representative and the Choctaw Nation is a party to this proceeding as a matter of law. They have a right to express their opinion through her. * * *
>
> "* * * * *
>
> "* * * It is not our position to tell this party they can't express their opinion on a matter that federal law says they have to."

The trial court overruled mother's objection:

> "Having heard the various arguments of counsel and based upon the fact that this is an issue within the case and that this person has been denominated by the nation or the tribal nation and the fact that this person has reviewed the record herein[,] I'm going to overrule the objection."

Bacon testified that continued custody of child by mother would likely result in "serious emotional and physical damage to * * * child." She also testified that the tribe supported termination of mother's parental rights to make child available for adoption into a permanent home and that the tribe believed that termination was in the best interest of child. Bacon testified that the opinions she expressed were hers and the tribe's. Bacon testified that she was raised in the Choctaw culture and has been familiar with it all her life. She also stated that the termination proceeding did not violate the culture, traditions, or laws of the tribe. In elaborating on her conclusions, Bacon testified that the nurturing of children is an important tribal value. She stated that there had been "lots of history" leading to the tribe's decision to support termination. Part of that history included the tribe's consent to the adoption of two of mother's other children and the

belief that mother was not "able or willing to provide the * * * nurturing environment that this baby needs." The tribe's Indian Child Welfare staff had worked with mother for at least a year before the decision to support termination was reached.

After the hearing, the court entered a judgment terminating mother's parental rights to child. On appeal, mother argues that, although Bacon may have been a representative of the tribe and familiar with its cultural heritage, her degrees in criminal justice and history, along with her limited experience, did not qualify her under section 1912(f) to render an opinion regarding the potential for serious emotional or physical damage to child should mother's rights not be terminated. As a result, mother argues that the state failed to put on evidence essential to its case and termination was improper. The state responds that Bacon was qualified as an expert witness under the statute and applicable Bureau of Indian Affairs (BIA) guidelines.

Under ICWA, evidence that the continued custody of a child by an Indian parent or custodian likely would result in serious emotional or physical damage to the child must include the testimony of "qualified expert witnesses." Section 1912(f).

■ The text of section 1912 does not identify the qualifications required for such a witness. However, the BIA has issued guidelines on that subject. The Guidelines for State Courts, 44 Fed Reg 67584 (1979), describe the individual "most likely" to be a qualified expert witness as

"(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and [child rearing] practices[; or]

"(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and [child rearing] practices within the Indian child's tribe[; or]

"(iii) A professional person having substantial education and experience in the area of his or her specialty." *Id.* at 67593.

Although this court has declined to adopt the BIA guidelines, they nevertheless are instructive to our interpretation of the statute. *See State ex rel Juv. Dept. v. Charles*, 70 Or App 10, 17 n 3, 688 P2d 1354 (1984), *rev dismissed* 299 Or 341 (1985) ("We decline to adopt the specific recommendations of the 'guidelines,' but we agree with the general proposition that an expert witness *within the meaning of that term* * * * must possess special knowledge of social and cultural aspects of Indian life.").

ICWA's requirements supplement and, where in conflict, displace state law governing the termination of parental rights to Indian children. *See State ex rel Juv. Dept. v. Tucker*, 76 Or App 673, 684-85, 710 P2d 793 (1985), *rev den* 300 Or 605 (1986). Thus, the relevant inquiry is not what type of evidentiary foundation would suffice to qualify Bacon as an expert on risks of harm to children under Oregon law but, rather, what is required under federal law. We look to the statutory text and context and, if necessary, its legislative history to aid that inquiry. *State ex rel Juv. Dept. v. England*, 292 Or 545, 550, 640 P2d 608 (1982); *Carson v. Carson*, 170 Or App 263, 268-69, 13 P3d 526 (2000).

As noted, the text of section 1912(f) does not provide an answer. The statute's context, however, makes clear that an essential purpose of ICWA is to promote the stability and security of Indian tribes. 25 USC § 1902; *England*, 292 Or at 551. Beyond text and context, the legislative history of section 1912(f) shows that its specific purpose is to provide greater insight into Indian culture for judges who make termination decisions involving Indian children. *Charles*, 70 Or App at 16 n 3. Consistent with those purposes, two of the three alternative categories of expert qualifications under the BIA guidelines do not require any particular *professional education or training at all* but, rather, focus on expertise in tribal culture. Specifically, subpart (i) permits testimony by a "member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and child rearing practices." Guidelines for State Courts, 44 Fed Reg at 67593. The focus of the guidelines is consistent with the legislative intent that section 1912(f) is to provide a medium for the explication of

tribal values with respect to the likelihood that a child would suffer harm in parental custody.

■      Bacon's testimony established that she was a member of the tribe; that she had been an Indian Child Welfare worker for the Choctaw nation for two years and was a designated representative of the tribe for testifying in termination proceedings; that she had been raised in the tribe's culture and was familiar with its child rearing values; and that she was familiar with the facts and circumstances of mother's case, because the tribe's child-welfare staff had monitored it for more than a year. That evidence established that Bacon was qualified to render an opinion as an expert witness under section 1912(f). Accordingly, the record included the "expert witness testimony" required by ICWA and was sufficient to support the termination of mother's parental rights to child under ICWA.

Affirmed.