Argued and submitted September 21, affirmed December 8, 1982, reconsideration denied January 21, petition for review denied March 1, 1983 (294 Or 569)

In the Matter of the Application of
Tracy Angus and Cyrus M. Waters
for a Writ of Habeas Corpus

ANGUS et al,
*Respondents,*

*v.*

JOSEPH et al,
*Appellants,*

SITKA COMMUNITY ASSOCIATION,
*Intervenor-Respondent.*

(No. D8204-68177, CA A25245)

655 P2d 208

Richard C. Goss, Portland, argued the cause and filed the brief for appellants.

R. Randy Harrison, Portland, argued the cause for respondents. With him on the brief were Craig J. Dorsay and Kent B. Thurber, Portland.

Leroy W. Wilder, Portland, argued the cause and filed the brief for intervenor.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiffs,[1] the biological parents of a one-year old child, brought this habeas corpus proceeding to obtain the release of their child from the physical custody of defendants, who in another proceeding were petitioning for adoption of the child.[2] Defendants have custody of the child pursuant to the consent of the natural mother.[3] The basis for plaintiffs' demand for the return of their child is the Indian Child Welfare Act of 1978, 25 USC § 1901 *et seq* (Supp 1981) (hereinafter ICWA). It is undisputed that, if the ICWA applies and is constitutional, plaintiffs are entitled to return of the child.[4] The trial court granted the relief sought, and defendants appeal. We affirm.

The ICWA was passed in part because of a Congressional finding

> "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies * * *", 25 USC § 1901(4),

and because

> "it is the policy of this nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families * * *." 25 USC § 1902.

The issue at trial was whether the biological parents qualified for the protections of the ICWA.

---

[1] To avoid confusion, we will call the natural parents "plaintiffs" and the prospective adoptive parents "defendants," even though they denominated themselves as "petitioners" and "respondents," below.

[2] At the conclusion of the habeas corpus proceeding, the court dismissed the adoption petition.

[3] The natural father did not consent to the adoption of the child. Neither party raised the issue at trial of the father's possible rights and remedies under state law, and we do not discuss it.

[4] The ICWA requires that, when an Indian child is removed from his biological parent for any foster care placement where the parent cannot have the child returned upon demand, consent to the placement is invalid if given before, or within 10 days after, the birth of the child and it must be given before a judge who certifies that the parent understands the consequences of the consent. 25 USC § 1903(1)(i), 1913(a). Neither requirement was met here. The ICWA also provides that the parent of an Indian child may revoke consent at any time before entry of a final decree of adoption and have the child returned. 25 USC § 1913(c).

The relevant definitions are as follows:

"* * * * *

"(4) 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe;

"* * * * *

"(8) 'Indian tribe' means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Department of the Interior] because of their status as Indians, including any Alaska Native village as defined in section 1602(c) of Title 43;

"(9) 'Parent' means any biological parent or parents of an Indian child * * *. It does not include the unwed father where paternity has not been acknowledged or established." 25 USC § 1903.

Thus, a parent can qualify for protection under the ICWA if his or her child (1) is a member of an Indian tribe or (2) is merely eligible for membership in an Indian tribe and either parent (excepting unwed fathers who have not established or acknowledged paternity) is a member of an Indian tribe.[5] The parent must also prove that the Indian tribe in which he or she claims membership for either the parent or the child is recognized as eligible for the services provided to Indians by the Department of the Interior.

In this case, both biological parents were age 14 and unwed at the time of the birth of their child. The mother consented to the adoption of her child three days after its birth. The father formally acknowledged paternity about seven months after the birth. Both parents have signed a revocation of the consent to adoption. The father claims membership in the Nez Perce tribe; the mother in the Sitka Community Association. Defendants assign as error the trial court's (1) failure to grant defendants' motion to dismiss made at the close of plaintiffs' case, (2) allowance of plaintiffs' motion to reopen their case after

---

[5] Defendants are wrong when they state, "The natural parents must prove that one of them is a member of a recognized Indian tribe and that the child is a member or eligible for membership *in that same tribe.*" (Emphasis supplied.)

both parties had rested, (3) decision in favor of plaintiffs and (4) holding that the ICWA is constitutional.[6]

■ Defendants first contend that the trial court erred in not granting their motion to dismiss. Mistakenly denominated a motion for a directed verdict, the motion came after plaintiffs had rested their case and after defendants had reserved putting on their case until additional pleadings were received. After the trial judge denied the motion, she allowed plaintiffs' motion to reopen their case. Treating defendants' motion as a motion to dismiss under ORCP 54B(2), we find no error. The standard for that motion is that, if the plaintiff has introduced credible evidence on the essential elements of the cause of action, the trial judge having the discretion to discount impeachment evidence, the motion should be denied. *Castro and Castro,* 51 Or App 707, 713, 626 P2d 950 (1981).

■ However, because of the decision of the trial judge to allow plaintiffs to reopen their case, which is also assigned as error and discussed below, we need not judge the sufficiency of plaintiffs' evidence at the time of the motion to dismiss under the *Castro* test. A denial of a motion for involuntary dismissal under ORCP 54B(2) is only a tentative and inconclusive ruling on the quantum of plaintiffs' proof. The rule states that, instead of dismissing, the court "may decline to render any judgment until the close of all the evidence," and a denial of the motion has the same effect. If plaintiffs' quantum of proof when they first rested failed to meet the *Castro* standard, the failure was cured after plaintiffs submitted additional evidence.[7]

---

[6] Defendants also assign as error the admission over their objection of certain documents and testimony. Because we find there was substantial evidence to uphold the trial judge's findings of fact even without consideration of the evidence objected to, we need not discuss these assignments of error. *See* OEC 103(1); Or Const, Art VII (Amended), § 3.

[7] As part of the same assignment of error, defendants claim that plaintiffs' case should have been dismissed because of plaintiffs' failure to file a replication. Plaintiffs did not file a replication until eight days after the first day of trial. Normally, the defendants' return is treated as the initial pleading in a habeas corpus proceeding, with the plaintiffs' replication serving as the answer. However, ORS 34.670 states that "[t]he plaintiff in the proceeding, on the return of the writ, *may,* by replication, signed as in an action, controvert any of the material facts set forth in the return * * *" (emphasis supplied.); and ORS 34.680 states in part, "The pleadings * * * shall be construed and have the same effect as in an action." ORCP 12B states, "The court shall, in every stage of an action, disregard

■ Defendants next assign as error the granting of plaintiffs' motion to reopen their case.

"It is well established that the reopening of a case at any time for the introduction of additional evidence rests in the sound discretion of the trial court, the exercise of which will not be disturbed unless a manifest abuse has occurred." *Arbogast v. Pilot Rock Lumber Co.,* 215 Or 579, 595, 336 P2d 329 (1959).

An abuse of discretion has been defined in another context as "arbitrary or oppressive" action. *State v. Lewis,* 113 Or 359, 364, 230 P 543 (1924). Defendants cite no case in which a decision allowing a motion to reopen was held to be reversible error and we find no abuse of discretion here. The trial judge stated that her reason for allowing the motion was that the case involved custody of a child. A case in which the interests of a child are at stake is a particularly inappropriate place in which to apply a "sporting theory" of justice. We also agree with plaintiffs that the broad remedial purposes of the ICWA support the trial court's decision to grant the motion.

Defendants next assign as error the trial court's decision on the merits. Because this was a trial to the court, our scope of review would normally be limited to whether, considering the evidence in the light most favorable to the prevailing party, there was substantial evidence to support the trial court's findings. *White v. Bello,* 276 Or 931, 933, 556 P2d 1362 (1976).[8] We recognize that application of the ICWA may result in disruption of a bond formed between the child and the adoptive parents. The essential determinations to be made here also involve mixed questions of fact and law, *e.g.,* membership in an Indian tribe. Nonetheless this is a law action, and we review it as a law action. With respect to the factual side of our review, we find that there was substantial evidence to uphold each of the trial court's findings.

---

any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." Here, no matters were raised at trial of which defendants were not already informed by way of plaintiffs' petition for the writ, which was served on defendants. We find no error.

[8] Appeal from a final judgment in a habeas corpus proceeding is brought "in like manner and with like effect as in an action." ORS 34.710.

■ The trial judge made the following findings of fact:

"1. TRACY ANGUS and CYRUS M. WATERS are the biological parents of Baby Boy Angus, born September 8, 1981;

"2. CYRUS M. WATERS has acknowledged and established paternity as of April 2, 1982;

"3. CYRUS M. WATERS is and has continuously been an enrolled member of the Nez Perce Indian Tribe since at least September 12, 1978;

"4. TRACY ANGUS is an Alaska Native and has been an enrolled member in the Sitka Community Association since April 27, 1982. She was not an enrolled member, although she was eligible for enrollment, at the time of the birth of the child;

"5. The Nez Perce Tribe is a federally recognized Indian tribe within the meaning of the Indian Child Welfare Act (ICWA);

"6. The Sitka Community Association is a federally recognized Indian tribe within the meaning of the ICWA;

"7. Baby Boy Angus is an enrolled member of the Sitka Community Association and would be eligible for membership in the Nez Perce Tribe, should his enrolled status with the Sitka Community Association ever terminate;

"8. CYRUS M. WATERS never consented to the adoption of Baby Boy Angus;

"9. TRACY ANGUS consented to the adoption of Baby Boy Angus on September 10, 1981, three (3) days after birth, in Emanuel Hospital before two (2) lay-witnesses;

"10. TRACY ANGUS has formally revoked and withdrawn consent to the adoptive placement of Baby Boy Angus."

We point out one general consideration: the ICWA itself contains no definition of membership in an Indian tribe. In the absence of a Congressional definition, an Indian tribe has authority to determine its own membership. *Santa Clara Pueblo v. Martinez,* 436 US 49, 72 n 32, 98 S Ct 1670, 56 L Ed 2d 106 (1978); *see* F. Cohen, Handbook of Federal Indian Law 20-23 (1982). Formal membership requirements differ from tribe to tribe, as do each tribe's method of

keeping track of its own membership. There is thus no one method of proof of membership, but the testimony of a representative of tribal government would be probative evidence of membership.

Plaintiffs offered the following evidence. An enrollment officer of the Sitka Community Association testified that she approves enrollment applications and certifies enrollment in the tribe. She stated that as of April 17, 1982, both the natural mother and the child were duly enrolled members in the tribe. Enrollment forms support this testimony. The natural mother testified that both she and her child were enrolled members of the Sitka Community Association. A letter dated April 15, 1981, from the Acting Deputy Commissioner of Indian Affairs, was admitted into evidence. It states:

> "Please be advised that the Sitka Community Association, organized pursuant to the Indian Reorganization Act of 1934, as amended, constitutes a tribe within the meaning of federal law."[9]

The Chief of Tribal Government Services of the Portland branch office of the Bureau of Indian Affairs (BIA), whose responsibilities include being aware of what tribes are federally recognized, also testified that the Sitka Community Association is a federally recognized tribe.

The natural father testified that he is an enrolled member of the Nez Perce tribe. The Nez Perce tribe is included on a BIA list of federally recognized tribes that was admitted in evidence.[10] A 14-year employe of the Nez

---

[9] Defendants attempt to refute this evidence by pointing to the list published by the Bureau of Indian Affairs (BIA) in the Federal Register on July 8, 1981, pursuant to 25 CFR 54.6(b), of "the tribal entities that have a government-to-government relationship with the United States," acknowledging "their eligibility for programs administered by the Bureau of Indian Affairs" put in evidence by plaintiffs. The Sitka Community Association is not listed, but nothing about the document indicates that it is meant as an exclusive listing. The letter from the Acting Deputy Commissioner states that the Sitka Community Association "will be included on the list in the Federal Register when that list is published." The regulations governing the Federal Register list confine the definition of "Indian tribe" to Indian groups "within the continental United States," 25 C.F.R. § 54.1(f) (1981), and do not apply to tribes "which are already acknowledged as such," 25 CFR § 54.3(b) (1981). The list relied on by defendants contains no Alaskan tribe.

[10] See n 9, *supra.*

Perce tribe testified that she was familiar with the enrollment requirements of the tribe, that the natural father is a member of the tribe and that a child of the father would be eligible for membership.[11] A copy of a printout of a portion of a membership roll of the Nez Perce kept by the BIA was submitted into evidence. "Cyrus Michael Watters" [sic] is included on the list.[12] In sum, the plaintiffs' evidence amply supported the trial judge's findings of fact.

 We address finally defendants' contention that the ICWA is unconstitutional as a denial of equal protection under the Fifth Amendment of the United States Constitution. *See Bolling v. Sharpe,* 347 US 497, 74 S Ct 693, 98 L Ed 884 (1954). The United States Supreme Court has consistently rejected claims that laws that treat Indians as a distinct class violate equal protection. *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation,* 439 US 463, 99 S Ct 740, 58 L Ed 2d 740 (1979); *Delaware Tribal Business Committee v. Weeks,* 430 US 73, 97 S Ct 911, 51 L Ed 2d 173 (1977); *United States v. Antelope,* 430 US 641, 97 S Ct 1395, 51 L Ed 2d 701 (1977); *Fisher v. District Court,* 424 US 382, 96 S Ct 943, 47 L Ed 2d 106 (1976); *Morton v. Mancari,* 471 US 535, 94 S Ct 2474, 41 L Ed 2d 290 (1974). Traditional equal protection analysis cannot be applied.

---

[11] Defendants objected to this testimony at trial and assign its admission as error. The basis for objection is that it was an opinion "phrased in terms of inadequately explored legal criteria" under OEC 704, and that because the eligibility requirements were contained in the tribal constitution, which was not in evidence, the testimony was inadmissible under the best evidence rule, OEC 1002. The eligibility requirements of the tribe were never in issue; the tribal employe testified only that the father met those requirements, about which the employe had personal knowledge and the tribal constitution said nothing. Her conclusion as to the father's membership was not objectionable as embracing an ultimate issue of fact. OEC 704. If the witness lacked a basis in personal observation for her statement, this was a matter that defendants could expose on cross-examination, but we find no basis on which to reverse the trial court's determination that the witnesses' opinions were "helpful to a * * * determination of a fact in issue," which is the standard for lay opinion testimony under OEC 701.

[12] Defendants objected to this evidence below and assign its admission as error on appeal, on the ground that a membership roll kept by the tribe was the "best evidence" of tribal membership. Defendants' objection based on the rule reflects a common misunderstanding of the best evidence rule, which applies only when the actual terms or conditions of a document are in issue and are attempted to be proved. *See* Comment to OEC 1002 and n 12, *supra.* The contents of the tribal membership roll were not an issue here, only membership itself.

In *Morton v. Mancari, supra,* the court stated:

> "Literally every piece of legislation dealing with Indian tribes and reservations, and certainly all legislation dealing with the BIA, single out for special treatment a constituency of tribal Indians living on or near reservations. If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 USC) would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized." 417 US at 552.

Upholding a law granting Indians a hiring preference at the BIA, the court stated, "The preference, as applied is granted to Indians not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities * * *." 417 US at 554. The same is true of the ICWA, which nowhere requires any specific quantum of Indian blood for a person to come under its protection. We therefore apply the *Morton v. Mancari* test:

> "As long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." 417 US at 555.

The court upheld the Indian hiring preference law, because "the preference is reasonable and rationally designed to further Indian self government * * *."[13] The goal of the ICWA is to protect Indian families against disruption, pursuant to a Congressional finding that an alarmingly high percentage of Indian families are broken up by unwarranted removal of Indian children from them and that 'there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children * * *." 25 USC § 1901(3), (4). We hold the protection of the integrity of Indian families to be a permissible goal that is

---

[13] Defendants argue that, because the ICWA is not related to Indian self-government, it fails the *Mancari* test. This misrepresents *Mancari's* holding. The furtherance of Indian self-government was only an example of a goal that is "tied rationally to the fulfillment of Congress' unique obligation toward the Indians * * *"; it is not the only permissible goal.

rationally tied to the fulfillment of Congress' unique guardianship obligation toward the Indians and that the ICWA is therefore not unconstitutional.[14]

Affirmed.

---

[14] Because the ICWA does not absolutely prohibit adoption of Indian children by non-Indians, but only institutes procedural protections for the Indian parents, we need not discuss defendants' arguments under *Loving v. Virginia,* 388 US 1, 87 S Ct 1817, 18 L Ed 2d 1010 (1967), which struck down Virginia's anti-miscegenation law.