Argued and submitted June 1, 1992; resubmitted In Banc October 14, 1992, reversed and remanded for further proceedings January 13, reconsideration denied March 17, petition for review allowed April 20, 1993 (316 Or 142)

In the Matter of the Adoption of
Loren Kyle Edgar Quinn, a Minor.

Peter Gordon QUINN
and Kylene Johnson Quinn,
*Respondents,*

*v.*

Maki WALTERS,
*Appellant.*

(A91-010; CA A71493)

845 P2d 206

Craig J. Dorsay, Portland, argued the cause for appellant. With him on the briefs was Meyer & Wyse, Portland.

Mildred J. Carmack, Portland, argued the cause for respondents. With her on the brief were Thomas V. Dulcich and Schwabe, Williamson & Wyatt, Portland.

De MUNIZ, J.

Reversed and remanded for proceedings not inconsistent with this opinion.

## De MUNIZ, J.

Mother appeals from a judgment granting the Quinns' petition to adopt her child after the trial court denied her motion to dismiss the petition for adoption. ORS 109.350. The Quinns cross-assign as error the admission in evidence of an affidavit of the Registrar of the Cherokee Nation of Oklahoma. On *de novo* review, ORS 19.125(3), we reverse.

On the day her son was born, mother signed documents to voluntarily relinquish him for adoption to the Quinns. The documents included a consent to adoption, which became irrevocable under state law after certain requirements were met. ORS 109.312(2)(a). Before the adoption judgment was entered, mother filed a revocation of consent to adoption and moved to dismiss the adoption petition. Her revocation was based, in part, on the Indian Child Welfare Act (ICWA), 25 USC §§ 1901 *et seq.* She claims that child is an Indian child, as defined in ICWA, and that she is, therefore, entitled to revoke her consent to adoption. *See* 25 USC § 1913(c).

According to mother's evidence, she became a member of the Cherokee Nation of Oklahoma a week before the hearing on her motion to dismiss the adoption proceeding, and child was then eligible for membership in the tribe.[1] If that evidence is true, child is an "Indian child," as defined in ICWA:

" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 USC § 1903(4).

■ The trial court denied mother's motion to dismiss the adoption petition. It held that ICWA does not apply, because mother was not a member of an Indian tribe when the consent became irrevocable under state law. Mother assigns that ruling as error.

---

[1] The affidavit of the registrar of the tribe states that mother "is a duly registered member of the Cherokee Nation of Oklahoma" and that "any biological child of [mother] is eligible for membership in the Cherokee Nation of Oklahoma." Although the affidavit does not say when mother's membership was effective, mother does not assert that she was a member any earlier than the week before the hearing.

The trial court erred. If child met the definition of an Indian child at the time of the hearing, mother is entitled to revoke her consent to adoption. 25 USC § 1913(c) provides:

"In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn *for any reason at any time prior to the entry of a final decree of termination or adoption*, as the case may be, and the child shall be returned to the parent." (Emphasis supplied.)

The plain meaning of that statute is that the consenting parent has until entry of the final adoption or termination judgment to revoke consent to adoption. State adoption law cannot interfere with that federal right. So long as a final decree of adoption or termination has not been entered, the parent can revoke. There is no requirement that membership or eligibility for membership in the tribe must be established before the consent is signed or becomes irrevocable under state law, when consent can become irrevocable without court action.

In reaching its contrary conclusion, the trial court relied on *Matter of Adoption of Infant Boy Crews*, 60 Wash App 202, 803 P2d 24 (1991), which held that ICWA does not apply to a voluntary adoption, because the mother was not a member of a tribe at the time her parental rights were voluntarily terminated by court order. Under Washington law, the court enters an order approving the petition for relinquishment of the child. That order terminates the relinquishing parent's parental rights. RCW 26.33.090. In *Crews*, neither the mother nor the child was a member of an Indian tribe when the mother relinquished the child. The trial court entered a final order approving relinquishment and terminating parental rights. Later, but before the adoption was final, the mother established her membership in an Indian tribe and the child's eligibility for membership. The Court of Appeals rejected the mother's attempt to revoke, because the final termination order had been entered before the child became an Indian child as defined by ICWA.

In contrast, here, according to mother's evidence, child became an Indian child *before* the court had entered a final judgment of termination or adoption. That fact alone distinguishes this case from *Crews*. If mother establishes

that, before the "entry of a final decree of termination or adoption," 25 USC § 1913(c), child was an Indian child as defined in ICWA, she is entitled to revoke her consent to adoption for any reason up until the time the adoption judgment is entered. There is nothing in ICWA that requires that tribal affiliation be established before the consent is signed or becomes irrevocable under state law.

The dissent would adopt the reasoning used by the Washington Supreme Court in its decision affirming the Court of Appeals in *Crews*, 118 Wash 2d 561, 825 P2d 305 (1992), to conclude that ICWA should not apply in this case. That court said that ICWA was not intended to apply

> "when an Indian child is not being removed from an Indian cultural setting, the natural parents have no substantive ties to a specific tribe, and neither the parents nor their families have resided or plan to reside within a tribal reservation. In such a situation, whether or when a child meets the definition of 'Indian child' under ICWA is not controlling." 118 Wash 2d at 571.

It is worth noting that the Quinns do not rely on that reasoning here; their argument is purely related to the timing of the tribal membership. In any event, the analysis is clearly wrong. It adds, as a matter of *state* law, a requirement to ICWA that *Congress* did not impose: *i.e.*, that a child who meets the ICWA definition of "Indian child" is nonetheless not protected by ICWA, unless the child is being removed from an existing Indian cultural setting. 117 Or App at 591.

That is directly in conflict with the idea of tribal sovereignty and the policy of improving tribal ties reflected in ICWA. It also involves exactly the type of state court interference that ICWA was intended to protect against. If ICWA does not apply because the parent is not "Indian" enough for a particular state court, the protection afforded to the child, the parents *and the tribe* is defeated. As the Supreme Court said:

> "It is clear from the very text of the ICWA, not to mention its legislative history and the hearings that led to its enactment, that *Congress was concerned with the rights of Indian families and Indian communities vis-a-vis state authorities.* * * * Congress perceived the States and their courts as partly

*responsible for the problem it intended to correct." Missis-sippi Band of Choctaw Indians v. Holyfield, 490 US 30, 44, 109 S Ct 1597, 104 L Ed 2d 29 (1989). (Footnote omitted; emphasis supplied.)*

Congress has made the policy decision about the strength of the connection that a parent and child must have with the tribe for ICWA to apply—that the child be a member of the tribe or that the child be eligible for membership and the biological child of a member. 25 USC § 1903(4). It is not for state courts to add additional requirements, as the dissent would do.[2]

---

[2] The dissent's reliance on *Mississippi Band of Choctaw Indians v. Holyfield, supra*, for the proposition that "[o]ther courts have held that the ICWA does not apply when children are not being removed from existing Indian cultural settings," 117 Or App at 591, is, at best, curious. In *Holyfield*, the Court held that the tribal court had exclusive jurisdiction over the adoption of two Indian children, despite the fact that the parents had purposefully arranged for their births off the reservation and for their adoption by the Holyfields. 490 US at 40. The Court recognized that one of the purposes of ICWA is to promote "stability and security of Indian tribes." 490 US at 49 (quoting 25 USC § 1902). It said:

> "[Exclusive t]ribal jurisdiction under § 1911(a) was not meant to be defeated by the actions of individual members of the tribe, for Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians. * * * The numerous prerogatives accorded the tribes through the ICWA's substantive provisions [including presumptive jurisdiction over non-domiciliaries] must, accordingly, be seen as a means of protecting not only the interests of individual Indian children and families, but also of the tribes themselves." 490 US at 49. (Citations omitted.)

The consequences of holding that ICWA is not applicable are not only that the parent may not revoke consent to adoption; it also deprives the tribal court of presumptive jurisdiction and its right to intervene in state court proceedings involving the Indian child. *See* 25 USC § 1911(b), (c). That deprivation defeats the purpose of ICWA to " 'protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society.' " *Mississippi Band of Choctaw Indians v. Holyfield, supra*, 490 US at 37 (quoting H R Rep No. 95-1386 at 23 (1978)). If the tribe has a right to intervene, or to assert jurisdiction of its own court, it may well decide that a child who meets the definition of Indian child, although born of parents who are not in an "existing Indian cultural setting," should be returned to the tribe rather than being placed in a non-Indian adoptive home. That is the tribe's, not the state court's, decision. Engrafting a new requirement into ICWA that allows the dominant society to judge whether the parent's cultural background meets its view of what "Indian culture" should be puts the state courts right back into the position from which Congress has removed them. That would be especially ironic, in that one of the reasons that the parents may not be involved in their Indian culture could be the very policies of removal of Indian children that ICWA was intended to counteract. *See Mississippi Band of Choctaw Indians v. Holyfield, supra*, 490 US at 50 n 25. If state courts impose their own value system on these decisions, the tribes will never be able to regain members who have been lost because of earlier government policies.

■  The Quinns cross-assign error to the court's admission, over their hearsay objection, of the affidavit of the Registrar of the Cherokee Nation of Oklahoma to show that mother is a member of the tribe and that the child is eligible for membership. Mother makes no argument for the admissibility of the affidavit other than to say that it was properly admitted as part of a stipulation. It was not part of a stipulation.[3] We agree with the Quinns that the affidavit is hearsay and, in the absence of any contention that its admission falls within an exception to the hearsay rule, the trial court erred when it admitted it. *See* OEC 802.

■  The Quinns argue that, without the affidavit, mother did not prove that ICWA applied and, therefore, mother could not revoke her consent. They urge us to affirm the adoption judgment on that basis. Because the trial court overruled the hearsay objection and admitted the affidavit, mother never had any reason to offer other evidence on the same issue. The Quinns never challenged the sufficiency of the evidence regarding child's Indian status.[4] To say now that, because the

---

[3] The purported stipulation on which mother relies occurred during a colloquy between the court and counsel:

"THE COURT: Make an opening statement if you wish. Leave out the adjectives, you know what I mean.

"[MOTHER'S COUNSEL]: Before I start, I believe [counsel] and I have a stipulation that the Cherokee Nation of Oklahoma is a group of Indians that is recognized to [*sic*] services provided Indians by the Secretary of the Interior, of the United States.

"THE COURT: You have stipulated, that's all that is necessary.

"[MOTHER'S COUNSEL]: And that [mother] became a registered member of the Cherokee Indian Nation —

"THE COURT: As of last week, July 19, '91.

"[MOTHER'S COUNSEL]: Correct, and I have a document that came yesterday from the Cherokee Nation to establish that. It's our position that since the adoption has not been granted yet, under Federal Law, she is entitled to withdraw her consent to adoption anytime before the final decree is entered."

The Quinns argue that they did not stipulate to mother's tribal membership. Even if the stipulation was as mother contends, it does not include the affidavit, nor does it establish that *child* is either a tribal member or eligible for membership.

[4] The dissent accuses us of ignoring the Quinns' memorandum, in which they asserted that neither child nor mother is a member of the tribe. The memorandum was filed on the day of the hearing; there is no indication that it was responsive to the evidence presented at the hearing. Further, the objection that was made to the affidavit was a general hearsay objection. There was no argument regarding the basis for the Quinns' concern, for example, that the affidavit is not reliable. The Quinns have *never* asserted, either in the trial court or in this court, that there is anything

evidence that she offered was inadmissible, she has not established one of the elements of her claim, would not only be an improper use of appellate procedure,[5] it would also be grossly unfair.

We cannot know whether, had the trial court made the correct ruling on the evidence issue, mother could have presented other, admissible, evidence to prove child's connection with the tribe. Particularly in the light of the fact that there is *nothing* in the record to indicate that there was a genuine dispute about mother's or child's Indian status or about the accuracy of the information included in the affidavit, we will not use the trial court's error to deny mother the opportunity to meet the objection with admissible evidence.

The dissent laments the injustice of undoing the relationship and bonding that has occurred while this case has made its way through the courts. Under that analysis, however, we could never correct an erroneous custody determination, because of its adverse effects on the child and the adoptive parents.

We must remember that mother did not cause the delay in this case. When she sought to revoke her consent in April, 1991, child was 13 days old. Mother was entitled to regain custody at the latest by the time of the hearing, when child was 3 1/2 months old. The Supreme Court, faced with an even longer passage of time, said:

> "We are not unaware that over three years have passed since the twin babies were born and placed in the [adoptive] home * * *. Three years' development of family ties cannot be undone, and a separation at this point would doubtless cause considerable pain.

---

about the affidavit that is unreliable. Indeed, it is unlikely that they would assert the unreliability of an affidavit made by the same person on whose hearsay *letter* they relied in their memorandum as proof that child is *not* an Indian child. We do not know what their concern about the affidavit is, and their failure to argue that at the hearing deprived mother of the opportunity to meet the concern.

[5] Although we can affirm *despite* an evidentiary error, because evidential error is not presumed to be prejudicial, OEC 103(1), we know of no authority for affirming *because* of a prejudicial evidentiary error. When evidence material to the case has been incorrectly admitted, the appropriate disposition is remand for rehearing, excluding the inadmissible evidence.

*"Had the mandate of the ICWA been followed in 1986, of course, much potential anguish might have been avoided,* and in any case the law cannot be applied so as automatically to 'reward those who obtain custody, whether lawfully or otherwise, and maintain it during any ensuing (and protracted) litigation.' " *Mississippi Band of Choctaw Indians v. Holyfield, supra,* 490 US at 53 (quoting *In re Adoption of Halloway,* 732 P2d 962, 969 (Utah 1986)). (Emphasis supplied.)

As unpleasant as it is to apply the law as Congress has written it, we are required to do that.

Mother is entitled to reversal. The case shall be remanded for rehearing, excluding the hearsay evidence.[6]

Reversed and remanded for proceedings not inconsistent with this opinion.

**EDMONDS, J.,** dissenting.

The majority errs when it holds that mother is entitled to reversal of the judgment of adoption because it misconstrues the Indian Child Welfare Act (ICWA) and improperly remands on *de novo* review. Based on the record before us, we should affirm.

The record establishes the following facts. On April 9, 1991, child was born. Mother, 14 years old at the time, initially contacted the Quinns in September or October of 1990 at the urging of mother's parents. The Quinns retained an attorney to advise mother about the adoption process. Over the next few months, mother had several contacts with

---

[6] On remand, the trial court is directed to ICWA guidelines promulgated by the Bureau of Indian Affairs. 44 Fed Reg 67,584 (1979). Although the guidelines are not binding on the courts, they are instructive. Under the heading "Pretrial requirements," the guidelines provide:

"B.1. Determination That Child Is an Indian

"(a) *When a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification* of the child's status from either the Bureau of Indian Affairs or the child's tribe. In a *voluntary placement* proceeding where a consenting parent evidences a desire for anonymity, the court shall make its inquiry in a manner that will not cause the parent's identity to become publicly known." 44 Fed Reg at 67,586. (Emphasis supplied.)

There can be no doubt that the trial court in this case has "reason to believe" that an Indian child is involved; indeed, it accepted, albeit erroneously, mother's evidence establishing that fact. To further the purposes of ICWA, the trial court should not enter a judgment of adoption until it verifies whether or not child is an Indian child.

the Quinns. She and her parents received and reviewed adoption documents. On the day that child was born, she executed an "irrevocable" consent to the adoption in the presence of her attorney. The consent recites, "My child is not an 'Indian child' as defined in the Indian Child Welfare Act (25 USC 1901 et seq)." The Quinns obtained physical custody of child on the next day and he has remained in their custody since that time. A petition for adoption was filed the same day.

The potential implication of the ICWA had not gone unrecognized by the parties. The Quinns' attorney (a different attorney than the one hired to represent mother) was notified in late 1990 that mother's grandfather was in the process of registering as a member of the tribe. Quinns' attorney contacted representatives of the Cherokee Nation of Oklahoma to inquire about mother's status in December, 1990. Based on the name supplied to them by the attorney, the tribe declined to intervene. In support of the adoption, mother executed an affidavit that said in part:

> "I am not a member of any Indian tribe nor, to my knowledge, am I eligible for enrollment in any tribe. We contacted the Cherokee Nation several times by telephone and by letter, because I believe my father's grandmother was a member of the tribe. The Cherokee Nation advised that it is not empowered to intervene in this matter.
>
> "7
>
> "I know the Quinns and want them to adopt my baby. I feel this is in the best interests of the child."

Mother sought to revoke her consent on April 22, 1991, and filed a motion to dismiss the adoption proceeding on May 14, 1991. These actions occurred after the maternal grandmother determined that an incorrect name had been supplied to the tribe in order to ascertain membership eligibility for mother and child.

A hearing on the motion to dismiss was held on July 24, 1991. Mother was represented by an attorney. In her opening statement, mother offered a purported stipulation that she had become a registered member of the Cherokee Nation of Oklahoma as of July 19, 1991. Before this court, she argues that the parties stipulated in that opening statement that child was eligible for membership. The Quinns argue that they did not enter into any stipulation. The majority

correctly points out that the purported stipulation makes no reference to child's membership or eligibility for membership. *See* 117 Or App at 585 n 3. In order for mother to prevail on her motion, she must prove compliance with 25 USC § 1903(4). It provides that an Indian child is

"any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and is the biological child of a *member* of an Indian tribe."

At the hearing on the motion to dismiss the adoption petition, mother called four witnesses to testify. Before the first witness testified, mother's counsel said:

"My first witness will be Maki Walters. I have had this marked as Exhibit 1, and supplied it to counsel, an exhibit from the Cherokee Indian Nation.

"THE COURT: Any objections?

"[QUINN'S COUNSEL]: Your honor, it is a hearsay statement to prove a matter asserted. I am not in a position to waive any objections.

"THE COURT: It's received."

Exhibit 1 is a notarized affidavit of an individual who says he is the Registrar of the Cherokee Nation of Oklahoma, that he has examined tribal records, and that any biological child of mother is eligible for membership. Mother offered no additional evidence about child's eligibility and made no motion to continue the hearing so that other evidence of that fact could be procured.

On appeal, mother argues that the provisions of the ICWA entitles her to withdraw her consent at any time before the final decree of adoption is entered and that the court erred when it held to the contrary. The trial court held that the ICWA was inapplicable, because mother was not a member of an Indian tribe at the time her consent became irrevocable under Oregon law. *See* ORS 109.312(2)(a).

Faced with similar facts,[1] the Washington Supreme Court held in the *Matter of Adoption of Crews*, 118 Wash 2d

---

[1] The mother in *Crews* was not a member of a tribe at the time she signed a consent to adoption form. She formally enrolled in the Choctaw tribe after her parental rights had been terminated. On the basis of her newly acquired membership, she sought to invoke the protections of the ICWA and revoke her consent. There was no evidence that the mother had ever lived on a reservation or that she had plans

561, 825 P2d 305, 310 (1992),[2] that

"[the] ICWA is not applicable when an Indian child is not being removed from an Indian cultural setting, the natural parents have no substantive ties to a specific tribe, and neither the parents nor their families have resided or plan to reside within a tribal reservation."

In this case, there is no evidence in the record that mother has been part of an Indian cultural setting either on or off a reservation. At the time the petition for adoption was filed, neither of mother's parents was a member of an Indian tribe. There is no evidence in the record that mother would raise her child in an Indian environment if granted custody. To the contrary, mother has not been the individual expressing interest in her heritage. Rather, it was mother's grandfather that inquired about tribal membership, and did so only *after* mother had consented to the adoption.[3] The holding in *Crews, supra,* is based, in part, on the fact that the Act was passed to counteract the large number of unwarranted removals of Indian children from their families and tribes.[4]

---

to relocate to one. The mother did not testify that if custody was returned to her that she would raise her child in an Indian environment and showed no interest in her Indian heritage.

[2] The majority cites the Washington Court of Appeals' holding in *Matter of Adoption of Infant Boy Crews*, 60 Wash App 202, 803 P2d 24 (1991), that the ICWA did not apply because the mother was not a member at the time her parental rights were formally terminated. The majority then distinguishes that holding on the basis that Washington's adoption procedures differ from Oregon's. That distinction is irrelevant because the Washington Supreme Court superseded the Court of Appeal's decision when it held that it held the facts of the case did not place it within the contemplation of the Act. 118 Wash 2d 561, 825 P2d 305 (1992).

[3] In a report to the court, the Children's Services Division reported that

"the change of plans about the adoption have more to do with the intent of the maternal grandparents to raise this child than it does, indeed, with the wishes or desires of the biological mother to do so."

[4] Congress expressly found:

"That an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that such an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 USC § 1901(4).

Based on these findings, Congress declared the policy of the ICWA was to

"protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families * * *." 25 USC § 1902.

*See also, Angus v. Joseph*, 60 Or App 546, 556, 655 P2d 208 (1982), *rev den* 294 Or 569, *cert den sub nom Woodruff v. Angus*, 464 US 830 (1983). Other courts have held that the ICWA does not apply when children are not being removed from existing Indian cultural settings.[5] Like the mother in *Crews*, allowing mother to revoke her consent in this case will not further the underlying policy of the ICWA.

Moreover, the definition of an Indian child in 25 USC § 1903(4) supports the proposition that Congress intended that the Act apply only if the child is being removed from an Indian cultural setting. The definition expressly requires that the child subject to adoption *be a member* of an Indian tribe or be the biological *child of a member*. Because members of Indian tribes are more likely to be actively pursuing their Indian heritage, the requirement that the child's parent be a member is consistent with the express purpose of the Act to promote stability and security of Indian families and tribes. Here, after the petition for adoption was filed and her consent became irrevocable under state law, mother became a member in order to facilitate the desire of her parents to raise the child in a non-Indian setting. We should join with Washington and the other states who have held similarly and conclude that the ICWA is not applicable to the facts of this case. The majority's fear that such a holding will defeat the protection afforded to tribes under the ICWA is unwarranted, because it would be limited to the facts before us.

On cross-assignment, the Quinns argue that the admission of exhibit 1 was error. In response, mother does not argue that the trial court correctly admitted exhibit 1. Rather, she argues that the Quinns stipulated as to the child's eligibility, an argument not supported by the record. Second, she suggests that "Counsel for Petitioners never raised the issue at any point in the proceeding, and never argued that the ICWA did not apply because Defendant had failed to prove

---

[5] *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 US 30, 109 S Ct 1597, 104 L Ed 2d 29 (1989); *In re Adoption of T.R.M.*, 525 NE2d 298 (Ind. 1988), *cert. denied sub nom., J. Q. v. D.R.L.*, 490 US 1069, 109 S Ct 2072, 104 L Ed 2d 636 (1989); *Claymore v. Serr*, 405 NW2d 650 (S.D. 1987); *In re S.A.M.*, 703 SW2d 603, 608 (Mo Ct App 1986); *In re Adoption of Baby Boy D*, 742 P2d 1059, 1063-64 (Okla 1985), *cert. denied sub nom., Harjo v. Duello*, 484 US 1072, 108 S Ct, 1042, 98 L Ed 2d 1005 (1988); *In re Baby Boy L*, 231 Kan 199, 643 P2d 168 (1982).

tribal membership and eligibility of the child for membership." The majority mistakenly adopts that argument when it says, "The Quinns never challenged the sufficiency of the evidence regarding child's Indian status." 117 Or App at 585.

The majority ignores a memorandum submitted to the trial court in opposition to mother's motion to dismiss in which the Quinns argue that child "is not a member of an Indian tribe. Since [mother] is not a member of an Indian tribe, the ICWA does not apply to the case at hand." By disregarding challenges made by the Quinns before the conclusion of the hearing, the majority announces a new rule of appellate procedure which requires a party to assert an evidentiary objection in a closing argument in response to a motion to dismiss in order to preserve the objection. Moreover, mother was aware that proof of child's eligibility was critical to her motion. In an affidavit in support of her motion, she said,

> "The provisions of the Indian Child Welfare Act (25 USC. Section 1901 et seq) does [sic] apply to the minor child in that the child's maternal great-grandfather is an enrolled and full-blooded member of the Cherokee Indian Tribe and I am now advised that I may also be an enrolled member of said tribe."

If the phrase "*de novo* on the record" is to have any meaning, there must be a point in time when issues are determined based on the evidence presented. *See Tanner v. P & C Tool Co.*, 9 Or App 463, 497 P2d 1230 (1972). We have reached that point in this case. Mother was represented by counsel, knew that she had to prove that child was a member or eligible for membership when she filed her motion to dismiss, and presumably knew that any appeal would be based on the record that she made in the trial court.

The majority believes that deciding the case on the cross-assignment works an unfairness because mother was entitled to rely on the trial court's erroneous evidentiary ruling and, had she known that exhibit 1 was inadmissible, she would have offered other evidence of child's eligibility. The latter supposition is speculation not supported by the record. There is not a hint anywhere in the record that mother had more evidence about child's eligibility than the affidavit. If evidence was available, she would have offered it.

Parties to litigation are on notice that every time a case is tried in the trial court and *de novo* review is available, an evidentiary decision in the trial court may be changed in the appellate court proceeding thereby affecting the record on review. Mother does not now argue that the trial court's decision about exhibit 1 was correct. How can she "reasonably" rely on the erroneous admission of an exhibit, the admission of which she cannot justify?

The facts of this case illustrate why it is a rare occasion when we should remand when we have *de novo* review. [6] This case started in April of 1991 with the birth of a baby who was voluntarily given to adoptive parents who have cared and nurtured that child since that time. How unjust that, when the interests of the ICWA are not at stake, the law would undo those relationships and the bonding that must have occurred in order to allow mother to start over again.[7] Justice without finality is no justice at all. Appellate courts often are accused of sitting in "ivy-covered towers" making idealistic decisions unrelated to "the real world." Here, that accusation rings true. Based on the facts of this case, the majority's desire to carry out the policy of the ICWA is misplaced. This case is not about retaining an "Indian child" in an Indian cultural setting. It is about affording certainty and finality to litigation involving a child's future and about adoptive parents who have endeavored to "touch all the legal bases." We should not remand to give mother a second chance to prove what she knew she was required to prove in July of 1991.

I dissent.

Deits, J., joins in this dissent.

---

[6] Remand on *de novo* review may be appropriate when there are insufficient facts in the record on which to base our decision. That's not the case here.

[7] The majority relies on a quote from *Holyfield, supra,* to support its assertion that the passage of time is not a reason for affirmance. *See* 117 Or App at 586. In *Holyfield,* the issue was whether a mother could move off the reservation in order to avoid the application of the ICWA. The integrity of the Act was at stake. Here, unlike in *Holyfield,* the purposes of the ICWA are not furthered by mother's invocation. In that light, we should be concerned about the bonded relationship that has been formed and the fact that mother has had her day in court.