Argued and submitted June 26, affirmed September 27, 2000

In the Matter of Brittany Kirk, Daniel Kirk,
Pazia Kirk, Kendra Kirk, and Tony Ray Kirk-Smith,
Minor Children.

STATE ex rel STATE OFFICE FOR SERVICES
TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

KLAMATH TRIBE,
*Respondent - Appellant,*

*and*

Sonia KIRK,
Brittany Kirk, Daniel Kirk, Pazia Kirk,
Kendra Kirk and Tony Kirk-Smith,
*Respondents.*

(9700470JV; CA A104784 (Control))

In the Matter of Shaya Say, Tanaya Say
and Tearra Say, Minor Children.

STATE ex rel STATE OFFICE FOR SERVICES
TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

KLAMATH TRIBE,
*Appellant,*

*and*

Darrel SAY,
Jennifer Say, Shaya Say,
Tanaya Say and Tearra Say,
*Respondents.*

(9700534JV; CA A104785)
(Cases Consolidated)

11 P3d 701

Stephanie L. Striffler, Special Counsel to the Attorney General, argued the cause for appellant State Office for Services to Children and Families. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Craig J. Dorsay argued the cause for respondent - appellant Klamath Tribe. With him on the appellant's brief was Jennifer K. De Wald.

Lynn M. Travis argued the cause for respondents Brittany Kirk, Daniel Kirk, Pazia Kirk, Kendra Kirk, Tony Kirk-Smith, Shaya Say, Tanaya Say, and Tearra Say. With her on the brief were Karen S. Torry and Juvenile Rights Project, Inc.

No appearance by respondent Sonia Kirk.

No appearance by respondent Darrel Say.

No appearance by respondent Jennifer Say.

Before Linder, Presiding Judge, and Brewer, Judge, and Ceniceros, Senior Judge.

BREWER, J.

## BREWER, J.

This is a consolidated proceeding involving eight children who are within the dependency jurisdiction of the juvenile court. ORS 419B.100. The State Office for Services to Children and Families (SCF) and the Klamath Tribe (the Tribe) appeal from the trial court's declaratory judgment that none of the children was an "Indian child" and, thus, could not be subject to an "Indian Child Welfare Act Agreement" (the agreement) executed in 1989 between the Tribe and SCF. We review for errors of law and affirm.

The children, who are all in the custody of SCF, sought a judgment directing SCF to proceed with planning for their futures without complying with the agreement. Each of the children is the biological child of a member of the Tribe, but each child is also below the 25 percent blood quantum required for tribal membership. Despite the fact that the children are ineligible for tribal membership, the agreement purports to accord the Tribe the right to participate in planning decisions involving their care and placement. The agreement provides, in part:

"[T]he definition of 'Indian child' at 25 USC [§] 1903(4)[1] and OAR 412-26-015(8)[2] shall be replaced with the term 'Klamath child' defined as follows: any unmarried person who is under age eighteen and is either (a) a member or eligible to be a member of the Klamath Tribe or (b) is the biological child of a person who is a member of or eligible to be a member of the Klamath Tribe."

The agreement recited that it was executed under the authority of the Indian Child Welfare Act (ICWA), 25 USC §§ 1901-1963, and ORS 190.110 (1989).[3] ICWA

---

[1] 25 USC § 1903(4) provides that " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."

[2] That rule has been renumbered OAR 413-070-0120(8). It provides that an " 'Indian child' is any unmarried person under age eighteen who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."

[3] ORS 190.110 (1989) provided:

"(1) In performing a duty imposed upon it or in exercising a power conferred upon it, a unit of local government or a state agency of this state may

"was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Mississippi Choctaw Indian Band v. Holyfield*, 490 US 30, 32, 109 S Ct 1597, 104 L Ed 2d 29 (1989).

In the first section of ICWA, 25 USC § 1901(3), Congress found

"that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting *Indian children who are members of or are eligible for membership in an Indian tribe*[.]" (Emphasis added.)

In furtherance of the protection of Indian children, 25 USC § 1919(a) provides that

"States and Indian tribes are authorized to enter into agreements with each other respecting care and custody of *Indian children* and jurisdiction over child custody proceedings, including agreements which may provide for orderly transfer of jurisdiction on a case-by-case basis and agreements which provide for concurrent jurisdiction between States and Indian tribes." (Emphasis added.)

The agreement in this case requires SCF to notify the Tribe when a "Klamath child" is taken into SCF's physical custody or is otherwise involved in any other child welfare matter with SCF. It provides for preadoptive, adoptive, and

cooperate, by agreement or otherwise, with a unit of local government or a state agency of this or another state, or with the United States, or with a United States governmental agency, or with an American Indian tribe or an agency of an American Indian tribe. This power includes power to provide jointly for administrative officers.

"(2) With regard to an American Indian tribe, the power described in subsection (1) of this section includes the power of the Executive Department to enter into agreements to insure that the state, a state agency or unit of local government does not interfere with or infringe on the exercise of any right or privilege of an American Indian tribe or members of a tribe held or granted under any federal treaty, executive order, agreement, statute, policy or any other authority."

The 1999 Legislature amended ORS 190.110; however, the amendments do not bear on the issues involved in this case.

foster care placement preferences favoring extended Indian family and Indian foster homes over non-Indian foster homes or institutional placement. The agreement also requires SCF to consult with the Tribe before preparing a case plan for parents of a Klamath child. In addition, the parties agreed in 1991 that "[no] Klamath children as defined by the written agreement between [SCF] and the Klamath Tribe will be assigned to Permanent Planning case loads without the approval of the Klamath Tribe." Permanent planning case loads are those involving potential termination of parental rights.

The agreement's definition of "Klamath child" to include children who are not themselves eligible for membership in the Tribe is at the heart of this controversy. The children argued to the trial court that because they are not "Indian children" under ICWA, they may not be subject to an agreement that accorded the Tribe authority over the planning for their care and custody. SCF responded that, although the children are not "Indian children" under ICWA, the agreement nevertheless permissibly obligated SCF to collaborate with the Tribe with respect to planning for any Klamath child. In addition, the Tribe argued that the Oregon Legislature has expanded the ICWA definition of the term "Indian child" to include children who are subject to an agreement between the state and an Indian tribe.

The trial court acknowledged that ICWA authorizes tribal-state agreements that implement its provisions but determined that "[t]he Agreement in this case as it pertains to a 'Klamath Child' is not an agreement relating to the custody of an 'Indian Child' as provided in 25 USC § 1903(4), and, therefore, not within the provisions of 25 USC § 1919(A)." It held that:

"The Legislature has created two classes of dependent children—Indian Children as defined by ICWA, and all other children. We find no statute giving any state agency power or duty to redefine the class or to create a third class of dependent children. * * *

"* * * ICWA clearly defines 'Indian Child.' Any agreement pursuant to 25 USC § 1919 is limited to those children, and

there is no authority in 25 USC § 1919 to expand the definition of 'Indian Child.' It is within the absolute discretion and authority of the Tribe to establish its criteria for membership. However, the Tribe has no inherent authority over non-Indians. Therefore, neither ICWA nor the Tribe's quasi-sovereign status independently confer upon the Tribe the right to plan for the placement of a child who is not a member of the Tribe, or eligible for enrollment. In summary, we find: the Legislature has created classifications of dependent children; ORS 190.110 does not empower the executive or Tribe to redefine the class; and, to the extent the Agreement expands the definition of 'Indian Child,' it exceeds the authority of ORS 190.110." (Citations and footnotes omitted.)

The court entered judgment in favor of the children and ordered SCF to "plan for these children as it would for any child who is not an 'Indian Child' as defined in 25 USC § 1903(4)."

■　On appeal, SCF and the Tribe contend that ICWA's definition of "Indian child" is not controlling, because ICWA merely sets minimum federal standards for state child custody proceedings involving Indian children. They rely on 25 USC § 1902, which provides:

"The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of *minimum Federal standards* for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (Emphasis added.)

SCF also asserts that, "[i]ndependently of ICWA, the agency is required to incorporate the family's perspective and resources in planning and accordingly was authorized to enter into an agreement with the tribe regarding procedures for doing so." SCF asserts that the agreement is authorized by ORS 419B.343,[4] which directs that, in making case plans,

---

¹ ORS 419B.343 provides, in part:

it must incorporate the children's families' perspectives and consider family resources. SCF argues that the agreement merely "describes ways in which the family's cultural perspective is taken into account" and acknowledges that the tribe is a "resource" to families that include enrolled members.

The children respond that SCF is not authorized to enter into an agreement that extends tribal authority over non-Indian children. The children note that the agreement itself "specifically states that it is authorized by 25 USC § 19[1]9 and ORS 190.110." They argue that, because ICWA applies only to children who are eligible for tribal membership, irrespective of their parents' tribal status, ICWA does not furnish any authority for an agreement that applies to children who are not eligible for membership. In addition, children argue that, because ORS 190.110 accords state agencies the power to make agreements with tribes only when the agency is "performing a duty imposed upon it or exercising a power conferred upon it," it does not permit agencies to "create new duties and obligations—in other words, to make law—by agreement with Indian tribes."

---

"(1) To ensure effective planning for children, [SCF] shall take into consideration recommendations and information provided by the committing court before placement in any facility. [SCF] shall ensure that the case planning in any case:

"* * * * *

"(b) Incorporates the perspective of the child and the family and, whenever possible, allows the family to assist in designing its own service programs, based on an assessment of the family's needs and the family's solutions and resources for change; and

"* * * * *

"(2) Except in cases when the plan is something other than to reunify the family, [SCF] shall include in the case plan:

"(a) Appropriate services to allow the parent the opportunity to adjust the parent's circumstances, conduct or conditions to make return of the child possible within the time described in paragraph (b) of this subsection; and

"(b) An alternate, permanent plan to be implemented if the parent is unable or unwilling to adjust the parent's circumstances, conduct or conditions in such a way as to allow the return of the child. A rebuttable presumption is created that it is in the best interest of the child to implement the alternate, permanent plan if:

"(A) [SCF] has made reasonable efforts or, if the [ICWA] applies, active efforts to provide services that would make return of the child possible[.]"

■       We agree with children that SCF's arguments are not well taken. We begin with SCF's argument—with which the Tribe concurs—that because ICWA sets minimum federal standards, it is permissible to alter the class of children to whom ICWA applies as long as that alteration does not reduce ICWA's reach. There are two flaws in that reasoning. First, as a grammatical matter, ICWA's "minimum federal standards" language refers to "the removal of Indian children," placement of such children, and assistance to tribes in child and family service programs; it does not refer to the definition of an "Indian child." 25 USC § 1902. *See, e.g., State ex rel Juv. Dept. v. England,* 292 Or 545, 551, 640 P2d 608 (1982) (federal standards include "notice to parents and Indian custodians of any hearing regarding change in foster care placement or any termination of parental rights * * *; the affording such persons other rights such as the right to intervene and the right to appointed counsel * * *; and the requirement that preference be given in adoptive or foster placement to members of the Indian child's extended family and members of the child's tribe * * *"). In short, nothing in ICWA suggests that the definition of "Indian child" under 25 USC § 1903(4) is a "minimum federal standard."

Second, under SCF's reasoning, the class of children subject to tribal authority under ICWA is potentially limitless. SCF suggests no principled reason why it is permissible to treat first generation nonenrollable children as subject to ICWA but to exclude children who are several generations removed from eligibility for tribal membership. In either case, the Tribe would assert authority over children without any corresponding legal responsibility to provide them with benefits available to enrolled members. It makes no sense, given the plain language of section 1903(4), to conclude that Congress intended ICWA to reach so far.

■       . SCF's assertion that the agreement merely implements the directive in ORS 419B.343 to incorporate family perspectives and resources in planning is similarly flawed. The agreement does not incorporate the affected families' perspectives in planning decisions. Instead, the agreement gives the Tribe various placement preferences and collaborative rights in planning decisions. In addition, as implemented by the 1991 letter, the agreement gives the Tribe veto

power over permanent planning decisions for "Klamath children" in the juvenile dependency system. The claimed authority challenged by the children is that of the Tribe and may only coincidentally involve the children's family members. In fact, the agreement does not even provide for the possibility that the children's families' interests might conflict with those of the Tribe. In sum, the challenged provisions of the agreement do not incorporate *the families'* perspectives in planning decisions and thus it does not implement ORS 419B.343.

■■    We also agree with the children that ORS 190.110 does not authorize SCF to agree that the Tribe may exercise authority over them. An administrative body possesses only those powers that the legislature grants and cannot exercise authority that it does not possess. *Gaynor v. Board of Parole*, 165 Or App 609, 612, 996 P2d 1020 (2000). By its terms, ORS 190.110 merely authorizes intergovernmental agreements to further the agency's ability to "perform[ ] a duty imposed upon it or [to] exercise[ ] a power conferred upon it * * *." That statute does not authorize an administrative body to enter into agreements in order to carry out duties or powers that otherwise have not been imposed or conferred upon it by the legislature. SCF and the Tribe do not identify, nor can we discern, any lawfully imposed duty or power that requires or permits SCF to enter into an agreement with the Tribe that covers non-Indian children. Therefore, the agreement's definition of "Klamath children," so far as it extends tribal authority over children who are not "Indian children" pursuant to ICWA, is not authorized under ORS 190.110.

We turn to the Tribe's separate arguments. The Tribe maintains that it has "always had authority, notwithstanding the [a]greement, over domestic relation matters affecting their members and tribe." Therefore, according to the Tribe, "the [s]tate is not exercising authority nor abdicating any of its duties by entering into the [a]greement * * *." The Tribe does not claim general civil authority over non-Indians. *See, e.g., Strate v. A-1 Contractors*, 520 US 438, 117 S Ct 1404, 137 L Ed 2d 661 (1997) (tribes lack jurisdiction over civil case between nonmembers arising out of accident on state highway within reservation); *Montana v. United States*, 450 US 544, 101 S Ct 1245, 67 L Ed 2d 493 (1981)

(tribe lacks authority to regulate hunting and fishing by non-Indians on non-Indian land within reservation). However, the Tribe takes issue with the children's characterization of themselves as "non-Indian." It argues that ORS 419A.004(13)(c) "expands the definition of Indian child to include the definition found in an agreement between the [s]tate and a tribe." The Tribe also argues that it retains inherent authority over the domestic relations of families that include tribal members and, thus, that despite the children's ineligibility for membership, they are part of the tribal community. We disagree with the Tribe's arguments.

The inherent authority of Indian tribes does not permit them independently to determine their external relations. *Montana*; *United States v. Wheeler*, 435 US 313, 326, 98 S Ct 1079, 55 L Ed 2d 303 (1978); *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F3d 1087, 1091 (8th Cir 1998) (Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations*.). The Tribe does have inherent authority to determine eligibility requirements for tribal membership. *Montana*, 450 US at 564. However, the status of the children in this case—by virtue of the Tribe's own definition of membership—is no different from that of any other "non-Indian" child. *See Quinn v. Walters*, 117 Or App 579, 583, 845 P2d 206 (1993), *rev'd on other grounds* 320 Or 233, 881 P2d 795 (1994) ("If ICWA does not apply because the parent is not 'Indian' enough * * * the protection afforded to the child, the parent *and the tribe* is defeated." (Emphasis added.)).

The Tribe also relies on ORS 419A.004(13), which provides:

" 'Indian child' means any unmarried person less than 18 years of age who is:

"(a)   A member of an Indian tribe;

"(b)   Eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe; or

"(c)   *Covered by the terms of an [ICWA] agreement between Oregon and an Indian tribe*." (Emphasis added.)

The Tribe correctly observes that ORS 419A.004(13)(a) and (b) encompass the full definition of the term "Indian child" under ICWA. The Tribe contends that in order for subsection (13)(c) to have independent meaning, an "Indian Child Welfare Act agreement" may cover children who are not Indian children as defined in subsections (13)(a) and (b), as long as they are covered by an agreement between SCF and the Tribe. The question is whether subsection (13)(c) extends the definition of "Indian child" beyond the meaning of that term under ICWA. In our view, because only "Indian children" as defined by ICWA may be subject to an ICWA agreement, subsection (13)(c) applies only to such children.

ICWA authorizes states to enter into agreements with Indian tribes "respecting care and custody of *Indian children*." 25 USC § 1919(a) (emphasis added). In order to be an "Indian child" under ICWA, the child must be a tribal member or, alternatively, must be eligible for tribal membership and must be the biological child of a member. 25 USC § 1903(4). *For purposes of ICWA*, only Congress can define who is an Indian child. If the Tribe's argument were correct, SCF and the Tribe could, by agreement, designate *any* child as an Indian child, regardless of whether the child meets the criteria of 25 USC § 1903(4). Such a construction would be directly contrary to the policy and text of ICWA. *See Mississippi Choctaw Indian Band*, 490 US at 43 (explaining that, unless Congress clearly has expressed its intent that an ICWA term be given content by the application of state law, the Court will presume that Congress did not so intend). Thus, despite being listed as an alternative definition, subsection (13)(c) encompasses only Indian children within the meaning of ICWA.

To the extent that the agreement applies to "Klamath children" who do not qualify as Indian children under ICWA, it exceeds SCF's applicable statutory authority. Therefore, the trial court did not err in ordering SCF to plan for the children as it would for any child who is not an Indian child as defined in 25 USC § 1903(4).[5]

Affirmed.

---

[5] Because we resolve the case on statutory grounds, we do not reach the arguments regarding the issue of whether the agreement violates the children's equal protection and equal privileges rights.