# IN THE SUPREME COURT OF IOWA

No. 21–0324

Submitted December 14, 2021—Filed April 8, 2022

**IN THE INTEREST OF Z.K.,** Minor Child.

**J.K.,** Mother, and **Z.K.,** Father,

Appellants.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Woodbury County, Mary Jane Sokolovske, Senior Judge.


Father seeks further review after the court of appeals affirmed the juvenile court's decision to terminate his parental rights, arguing that Z.K. meets the statutory definition of an "Indian child" under the Indian Child Welfare Act, and therefore the Act should apply to his termination-of-parental-rights proceedings. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**


Appel, J., delivered the opinion of the court, in which all justices joined.


Dean A. Fankhauser (argued) of Vriezslaar, Tigges, Edgington, Bottaro, Boden & Lessmann, L.L.P., Sioux City, for appellant father.

Teresa A. O'Brien, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena (argued), Assistant Attorney General, for appellee State.

Michelle M. Hynes (argued) of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

**APPEL, Justice.**

This case involves a proceeding where the State seeks to terminate parental rights over a child, Z.K. The main fighting issue is whether Z.K. was an "Indian child"[1] under the Indian Child Welfare Act (ICWA). If Z.K. was, different substantive standards apply in a termination proceeding. *See* 25 U.S.C. § 1912(e) (mandating that the state prove by clear and convincing evidence that continued custody of the child by the parent or "Indian custodian" is likely to result in serious emotional or physical damage to the child).

The juvenile court held that Z.K. was not an "Indian child" under ICWA and that, as a result, ICWA did not apply to the proceedings. The juvenile court proceeded to terminate parental rights under the provisions of Iowa Code chapter 232.

Mother and Father appealed. We transferred the case to the court of appeals. The court of appeals affirmed. Only Father filed a timely application for further review, which we granted.

In Father's appellate brief, the sole issue presented is whether the juvenile court erred in determining that Z.K. was not an "Indian child" under ICWA. On further review, we consider only the ICWA issue. To the extent other issues were raised and preserved by Father, the opinion of the court of appeals stands as the final decision. *See State v. Doggett,* 687 N.W.2d 97, 99 (Iowa 2004).

---

[1]"[W]e 'use[] terms such as "Indian country," and demarcations such as "Indian" and "non-Indian" only for purposes of consistency with the existing legal framework and nomenclature.' " *State v. Bear,* 969 N.W.2d 499, 500 n.1 (Iowa 2022) (second alteration in original) (quoting *State v. Stanton,* 933 N.W.2d 244, 247 n.1 (Iowa 2019)).

**I. Factual and Procedural Background.**

**A. Original CINA Proceeding.** The case is complicated by confusion over Z.K.'s parentage. Z.K. had been in the care of his grandparents even though they did not have legal custody or guardianship over the child. On September 19, 2019, the State brought a child-in-need-of-assistance petition after the Iowa Department of Social Services received reports of domestic violence in the presence of Z.K. and other minor children while residing with their maternal grandparents. Based on the information provided at that time, the petition alleged that B.K. and E. were the parents of Z.K.

Contemporaneous with the filing of the original petition, the State filed a motion to determine the applicability of ICWA. The State also sent notices of the pending litigation to the Standing Rock Sioux Tribe in Fort Yates, North Dakota, and the Oglala Sioux Tribe in Pine Ridge, South Dakota.

On October 2, the Standing Rock Sioux Tribe responded that Z.K. was not eligible to be enrolled as a member. On October 21, the Oglala Sioux Tribe sent a letter stating that Z.K. "is not a member, or eligible to be enrolled as a member of the OST [Oglala Sioux Tribe]."

**B. Amended CINA Petition.** After the filing of the original petition, the State learned that the parents of Z.K. were in fact J.K. and Z.D.K. As a result, the State, on October 31, amended the motions to assert the correct parentage of Z.K. and sent the amended notices to the tribes.

On November 26, the Standing Rock Sioux Tribe responded to the amended petition and notice by stating again that Z.K. was not eligible for

enrollment as a member. The Oglala Sioux Tribe, however, did not provide a written response to the amended petition or the second notice of the motion to determine the applicability of the ICWA statutes.

On January 9, 2020, DNA tests confirmed J.K. and Z.D.K. as the biological parents of Z.K.

**C. Further Proceedings Before the Juvenile Court.**

1. *Introduction.* The juvenile court adjudicated Z.K. a child in need of assistance on February 2, 2020.

On February 7, the State again filed a motion to determine the applicability of ICWA. The State emphasized that there was no proof that the federal ICWA applied to Z.K. *See* 25 U.S.C. § 1903(4). The State asked for a hearing on the matter and a determination that ICWA was inapplicable.

Also on February 7, the State filed a petition to terminate parental rights.

2. *First hearing on applicability of ICWA statutes.* On October 14, the juvenile court held a hearing on the applicability of ICWA. The State urged that based on the written responses of the Standing Rock Sioux Tribe and the Oglala Sioux Tribe, the ICWA statutes did not apply.

Further, with respect to the Standing Rock Sioux Tribe, the State argued that Z.K. only has a 1/8 blood quantum. As a result, the State asserted that Z.K. did not qualify for membership in the tribe which requires a 1/4 blood quantum.

With respect to the Oglala Sioux Tribe, the State observed that both the maternal grandmother and Mother were not enrolled members of the tribe. The State recognized that the maternal grandmother had sent an enrollment

application to the Oglala Sioux Tribe but asserted that the application was otherwise incomplete and there was no evidence that the grandmother successfully disenrolled from the Standing Rock Sioux Tribe. Under the Oglala Sioux Tribe Constitution, in order for Mother to qualify as a member, one of her parents must be a member. But because the maternal grandmother was not a member, Mother was not eligible. And, domino-like, because Mother was not a member, Z.K. could not be a member.

After hearing arguments, the juvenile court entered a brief order holding that ICWA did not apply to the proceedings.

3. *Motion to stay proceedings and reopen ICWA record.* The parents were dissatisfied with the juvenile court's ICWA ruling and on October 15, they filed a motion to stay proceedings and reopen the record on ICWA. Mother's counsel asserted that she had spoken with Judy Morrison, a Native American Consultant with the Iowa Department of Corrections and the Iowa Department of Human Services. According to Mother's counsel, Morrison determined that the grandmother of Z.K. was a member of a "Native American Tribe" and believes that her grandchildren "have the blood quantum to be eligible for enrollment." The motion indicated that Morrison would be available to testify by telephone.

On October 20, the State filed a resistance to the parents' motion to stay proceedings and reopen the record on the ICWA issues. The State argued that Morrison was not an expert and that her testimony would not be admissible. Further, the State suggested that the mere fact that Z.K.'s grandmother may

have been a Native American was insufficient to establish that Z.K. was an "Indian child" under the applicable ICWA statutes.

The State also repeated its argument that while Z.K.'s maternal grandmother may have begun the process of relinquishing her Standing Rock Sioux tribal membership to become a member of the Oglala Sioux Tribe, there was no evidence that such a change was accomplished. Consequently, the State argued, until grandmother's attempt was successful, Z.K. was not an "Indian child" under ICWA.

Finally, the State noted that numerous notices had been sent to the tribes regarding the possibility that Mother was a tribal member. In response, both tribes indicated that Z.K. was not eligible for membership in their tribe.

4. *Hearing on pending motion and the State's petition.* The juvenile court held a hearing on the parents' motion to stay and reopen the ICWA hearing and the State's petition to terminate parental rights on November 18 and December 3.

The juvenile court hearing began with consideration of whether the Oglala Sioux Tribe should be permitted to intervene in the proceeding. Counsel for Mother presented as an exhibit a motion to intervene by the Oglala Sioux Tribe. The document had been provided to her the previous day by David Michael Red Cloud, the Oglala Sioux ICWA director. The State resisted intervention by the Oglala tribe and the introduction of the motion as an exhibit, but before the juvenile court could rule on the question, Red Cloud joined the proceeding and was examined as a witness.

Red Cloud testified that he first met Mother the day before the hearing. He testified that he had consulted with his supervisor and that it was absolutely the intention of the tribe to intervene in the proceeding. When the State pointed out that the motion to intervene contained a reference to a stranger who was not a party to the proceedings, Red Cloud apologized for the error.

Red Cloud testified that because of staff difficulties and COVID-19, there were two years' worth of cases that were not followed up on by the Oglala Sioux Tribe. He testified that the Bureau of Indian Affairs (BIA), which ordinarily signed off on tribal enrollments, had not done enrollments since March of 2020. When asked, however, whether Z.K. was "eligible for enrollment" in the Oglala Sioux Tribe, Red Cloud responded "Yes."

On cross-examination, Red Cloud stated that it was hard to get enrollment certified because of the health issues of a BIA employee responsible for certification. Yet, Red Cloud testified that the tribe could determine whether somebody is a member or eligible for membership without certification by the BIA.

Red Cloud further testified that his understanding was that Mother was still an enrolled member of the Standing Rock Sioux Tribe but had applied for membership in the Oglala Sioux Tribe the day before the hearing. Notwithstanding the application, Red Cloud made clear that Mother was not at present a member of the Oglala Sioux Tribe but had simply applied for membership. Red Cloud confirmed that under the Oglala Sioux Tribe Constitution, no one is eligible for membership unless they were born to a

member. Red Cloud testified that he believed that the maternal grandmother of Mother was an enrolled member of the Oglala Sioux Tribe based on his conversation with Mother but admitted he had no personal knowledge of whether grandmother was in fact enrolled in the Standing Rock Sioux Tribe.

Red Cloud further stated that the Mother is at least half Native American regardless of whether she is a member of the Standing Rock Sioux or Oglala Sioux Tribe, and as a result, "there was no way that [the Court] can determine that [Z.K.] is not an Indian." Red Cloud added, "[W]e need the time to figure this out."

The parents did not call Morrison as a witness at the hearing. In addition, no petition for intervention was filed by the Oglala Sioux Tribe after the hearing.

5. *Ruling of the juvenile court.* The juvenile court denied the motion to intervene from the bench at the November 18 hearing. The juvenile court did not expressly rule on the motion to stay proceedings. On February 25, 2021, the juvenile court subsequently entered an order ruling on the motion and the petition to terminate parental rights.

With respect to the status of the Oglala Sioux Tribe in the litigation, the juvenile court noted that the motion to intervene at the November 18, 2020, hearing was not successfully filed by the tribe but was offered as an exhibit that was not admitted into evidence after the State objected. The juvenile court further noted that after the November 18 hearing, the Oglala Sioux Tribe did not file a motion on its own behalf to intervene, and as a result, the question of tribal intervention was not before the court.

In addition, the juvenile court held that ICWA remained inapplicable to Z.K. The juvenile court emphasized the fact that the Standing Rock Sioux Tribe had twice provided a written declaration that Z.K. was not eligible for enrollment as Z.K. did not meet the required qualifications. Further, the Oglala Sioux Tribe, in writing, had also declared that Z.K. was not a member or eligible to be enrolled in the tribe. The juvenile court declined to stay the proceedings as requested by the parents.

Turning to the merits, the juvenile court found that the State had made reasonable efforts to avoid the out-of-home placement but those efforts had been unsuccessful. The juvenile court proceeded to terminate the parental rights to Z.K. pursuant to Iowa Code section 232.116(1)(*b*), (*g*), (*h*), and (*l*).

6. *Ruling of the court of appeals.* The court of appeals majority held that the record did not establish that Z.K. was an "Indian child." The court of appeals majority noted that at the time of the hearing, no tribe claimed the child or parents as members. As a result, under applicable law, the court of appeals majority concluded that Z.K. was not an "Indian child" at the time of the hearing.

The court of appeals found the testimony of Red Cloud inconsistent and not determinative, especially in light of the written responses to notices by the Standing Rock Sioux and Oglala Sioux Tribes. Although the court found ICWA inapplicable, it noted that the juvenile court's decision does not preclude future additional evidence that might support a different result, even as late as an adoption proceeding. In a brief footnote, the court of appeals concluded that the

Oglala Sioux Tribe did not qualify as an intervenor under Iowa Rule of Civil Procedure 1.407.

A dissent in the court of appeals took a different tack. According to the dissent, the testimony of Red Cloud that Z.K. was "eligible" for membership in the Oglala Sioux Tribe should have been conclusive on the question of whether Z.K. was an "Indian child" under ICWA. The dissent recognized that the earlier written response by the Oglala Sioux Tribe "muddied the waters" but reasoned that because there was a "distinct possibility" that ICWA applies to the proceeding, the court, under applicable federal regulations, should treat the child as an Indian child. *See* 25 C.F.R. § 23.107(b)(1). By applying the ordinary standards for termination under Iowa Code chapter 232, the dissent concluded that the juvenile court applied the wrong standard for terminating parental rights, which under the state ICWA, requires proof that the State provided "active efforts" to provide services to the Indian child.

**II. Standard of Review.**

We review proceedings to terminate parental rights de novo. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We may review the facts as well as the law and adjudicate the parents' rights anew. *Id.* "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

**III. Discussion.**

**A. Introduction.** In this further review, we consider only the question of whether the juvenile court erred in determining that the provisions of the state and federal ICWAs did not apply to this termination proceeding.

The state and federal ICWAs apply to child custody proceedings involving an "Indian child." *See* 25 U.S.C. § 1903(4); Iowa Code § 232B.5(2) (2021); *In re N.N.E.*, 752 N.W.2d 1, 7 (Iowa 2008). Under both state and federal ICWA, the state has a heightened burden of proof in any proceeding leading to the termination of parental rights. *See* 25 U.S.C. § 1912(f); Iowa Code § 232B.5(19). Parties who allege the applicability of ICWA bear the burden of proof. *See In re M.N.W.*, 577 N.W.2d 874, 876 (Iowa Ct. App. 1998). And, as pointed out by the court of appeals dissent in this case, the state ICWA requires a different standard of proof than the non-ICWA framework on the question of whether adequate services have been provided in the case. *Compare* Iowa Code § 232B.5(19) (requiring a showing of active efforts), *with id.* § 232.102(4)(*b*), (7), (10) (reasonable efforts standard).

**B. Was Z.K. an "Indian Child" at the Time of the Hearing, Thereby Triggering ICWA?**

1. *Definition of "Indian child" requires tribal membership of either parent or child.* The federal ICWA provides that " 'Indian Child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian Tribe or (b) is eligible for membership in an Indian Tribe and is the biological child of a member of an Indian Tribe[.]" 25 U.S.C. § 1903(4). Under the federal definition,

it is clear that either the biological parent or the child must be a *member* of an Indian tribe in order to trigger federal ICWA.

Further, the statute repeatedly utilizes the present tense in numerous places. It is clear that at the time the determination of ICWA applicability is made by the court, either the biological parent or the child must be a member of a tribe; it does not matter whether in the future the child might become a member.

The Iowa ICWA defines "Indian child" or "child" as "an unmarried Indian person who is under eighteen years of age or a child who is under eighteen years of age that an Indian tribe identifies as a child of the tribe's community." Iowa Code § 232B.3(6). In *In re A.W.*, however, we held that the section 232B.3(6) definition of "Indian child" was unconstitutional because it included children who were ethnic Indians but otherwise ineligible for tribal membership. 741 N.W.2d 793, 812–13 (Iowa 2007) (holding Iowa Code section 232B.3(6) unconstitutionally created two classes of children based on a racial classification that was not narrowly tailored to further a compelling government interest), *superseded by statute on other grounds*, 2013 Iowa Acts, ch. 113, §§ 2, 3 (codified at Iowa Code §§ 232.90, .114 (2014)), *as recognized in In re C.Z.*, 956 N.W.2d 113, 120–21 (Iowa 2021).

In *In re A.W.*, we observed that the United States Supreme Court had repeatedly upheld federal statutes providing special treatment for tribal Indians. *Id.* at 809. The special treatment based on tribal membership did not violate equal protection because:

>The preference is not directed towards a "racial" group consisting of "Indians"; instead, it applies only to members of "federally recognized" tribes. This operates to exclude many individuals who are racially to be classified as "Indians." In this sense, the preference is political rather than racial in nature.

*Id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 553 n.24 (1974)). The focus on the tribal membership, therefore, is crucial: special treatment is granted not because an individual is "Indian" as a discrete racial group but as a member of a quasi-sovereign tribal entity. *Id.* at 809.

Our later cases have held that the federal definition provides the boundary for the application of both state and federal ICWA statutes. *See, e.g., In re A.P.*, No. 08–0439, 2008 WL 5234364, at *3 (Iowa Ct. App. Dec. 17, 2008); *see also In re Abbigail A.*, 375 P.3d 879, 884 (Cal. 2016) (rejecting the argument that states are free to depart from the federal definition of "Indian child" to provide a higher standard of protection); *State ex rel. State Off. for Servs. to Child. & Fams. v. Klamath Tribe*, 11 P.3d 701, 705 (Or. Ct. App. 2000) (stating that as a grammatical matter, "ICWA's 'minimum federal standards' language refers to 'the removal of Indian children,' " not "the definition of an 'Indian child.' " (quoting 25 U.S.C. § 1902)). For the federal ICWA to apply, the proper question before the court is not whether the child is ethnic Indian. Instead, to trigger ICWA, the court focuses on the child's tribal membership: the child has to be a member of an Indian tribe or has to be eligible for membership and the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4). This is consistent with Congress's stated purpose for enacting ICWA: "To protect the best interests of Indian children and to promote the *stability* and *security of Indian tribes* and

families . . . ." 25 U.S.C. § 1902 (emphasis added); *see also* Sarah Krakoff, *They Were Here First: American Indian Tribes, Race, and the Constitutional Minimum*, 69 Stan. L. Rev. 491, 512 (2017) ("ICWA was passed explicitly to protect tribal self-governance and culture against the discriminatory practices of state social service workers and state courts.").

2. *Authority to determine tribal membership.* As for the authority to determine the tribal membership, the federal ICWA leaves it to the tribe to decide. *See* 25 C.F.R. § 23.108. While a tribe has binding authority to determine who is a member of the tribe, the courts still determine whether a child meets the definition of "Indian child" under the law. *In re Adoption of C.D.*, 751 N.W.2d 236, 242 (N.D. 2008) (holding that while the tribe has the authority to determine its own membership, a state court could make the legal determination whether the child meets the definition under federal ICWA).

3. *Application of ICWA principles to this case.* At the time of the hearing, it is clear that Z.K. was not an "Indian child" under ICWA. The Standing Rock Sioux Tribe had twice in writing stated that Z.K. was not eligible for membership in the tribe. That is the end of the matter with respect to the Standing Rock Sioux Tribe.

Whether Z.K. is an "Indian child" through the Oglala Sioux Tribe poses a somewhat different question. The Oglala Sioux Tribe, in writing, on October 21, 2019, stated that Z.K. was not eligible for tribal membership, but that assertion was later contradicted by Red Cloud in his testimony at the hearing on November 18, 2020. But, even Red Cloud admitted that Mother was not

presently a member of the Oglala Sioux Tribe at the time of the hearing, a prerequisite for Z.K. to be regarded as an "Indian child."

The record showed that in order for Z.K. to be an "Indian child" under ICWA, there were two remaining contingencies. First, the maternal grandmother would have to become a member of the Oglala Sioux Tribe. The record in this case established that the maternal grandmother had made an application but that it was incomplete due to the lack of a birth certificate and other documents. At the time of the hearing, there was no indication regarding the status of the maternal grandmother's application. Further, once the grandmother became a member of the Oglala Sioux Tribe, then the mother's application for membership would need to be approved for Z.K. to be an "Indian child" under the statute.

So, at the time of the hearing, Z.K. did not meet the definition of "Indian child" because Mother was not a member of the Oglala Sioux Tribe. It may be true, as the court of appeals dissent points out, that Z.K. might be "eligible" for membership once Mother became a member, but the statute requires more than eligibility of tribal membership; it requires that the child have a biological parent who is already a member. *See In re Abbigail A.*, 375 P.3d at 885. That is not the case here.

Father argues that the court erred because it had "reason to believe" Z.K. was an "Indian child" at the time of the hearing. Father cites to 25 C.F.R. sections 23.107 and 23.108 to support this contention. However, neither section undermines the conclusion of the juvenile court that at the time of the hearing, Z.K. was not an "Indian child."

Section 23.107 provides:

> If there is reason to know the child is an Indian child, . . . the court must:
>
>> (1) Confirm . . . whether the child is in fact a member . . . ; and
>>
>> (2) Treat the child as an Indian child . . . until it is determined on the record that the child does not meet the definition of an "Indian child" in this part.

25 C.F.R. § 23.107(b).

But here, the juvenile court had been provided a written statement from the Oglala Sioux Tribe stating that Z.K. was not a member and not eligible to be a member of the tribe. The parents later offered the testimony of Red Cloud, but his testimony did not challenge the fact that Mother was not a member of the tribe at the time of the hearing. Therefore, the juvenile court properly confirmed and determined on the record that Z.K. did not meet the definition of an "Indian child" under the statute. The section 23.107 requirements have been met.

Section 23.108 is entitled "Who makes the determination as to whether a child is a member, whether a child is eligible for membership, or whether a biological parent is a member of a Tribe?" 25 C.F.R. § 23.108. This regulation provides that the Indian tribe has the authority to determine who is a member. *Id.*

No one disputes that the Oglala Sioux Tribe has the authority to decide who is a member and who is not a member. Again, Red Cloud did not, at any time, suggest that Mother was a member or that Z.K. was a member at the time

of the proceeding. Instead, Red Cloud testified only that Z.K. was "eligible" to be a member.

Father's arguments must fail because based on the written submission of the Oglala Sioux Tribe and Red Cloud's testimony, Z.K. was not an "Indian child" at the time of the hearing. At most, the juvenile court may have had reason to know that Z.K. might at some time in the future become an "Indian child" if the maternal grandmother succeeded in becoming a member of the Oglala Sioux Tribe and the Mother then became a member of the tribe. But at the time of the hearing, these contingencies lay in the future. Because the juvenile court properly determined that at the time of the hearing Mother was not a member of the Oglala Sioux Tribe, Z.K. was not an "Indian child" under ICWA.

**IV. Conclusion.**

For the foregoing reasons, we affirm the juvenile court's ruling that ICWA does not apply in this case.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**